679 A.2d 1304

**Ruby I. GUSTISON and Robert Gustison, Appellants**

v.

**TED SMITH FLOOR PRODUCTS, INC., A to Z Vacuum Cleaners, Gerald Rapp, Jr. d/b/a/ State Farm Insurance Company and State Farm Mutual Automobile Insurance Company, Appellees.**

Superior Court of Pennsylvania.

Argued April 24, 1996.

Filed July 15, 1996.

444

W. Austin Allen, II, Doylestown, for appellants.

Richard D. Adamson, Kutztown, for Gerald Rapp, Jr. d/b/a State Farm Insurance, appellee.

Before McEWEN, President Judge, SAYLOR, and MONTEMURO, JJ.

MONTEMURO, Judge*:

This appeal lies from a judgment in favor of the defendants in a personal injury case.

On July 26, 1990, Ruby Gustison tripped and fell on a public sidewalk in West Reading, Pennsylvania. The sidewalk abutted two commercial properties: Gerald Rapp's insurance agency, (Gerald Rapp d/b/a/ State Farm Insurance Company)

* Retired Justice assigned to Superior Court.

and A to Z Vacuum Cleaners, which leased the property from Ted Smith Floor Products, Inc. At or near the property line, the sidewalk consisted of two adjoining slabs of concrete, of which one was approximately two and one-half inches higher than the other. Appellants Ruby and Robert Gustison instituted a negligence action against Ted Smith Floor Products, Inc., A to Z Vacuum Cleaners and Gerald Rapp, claiming that Mrs. Gustison caught her foot on the elevated slab, and that the ensuing fall caused severe and permanent injuries to her back and hand necessitating three surgeries and extensive treatment. State Farm Insurance Company was also named as defendant under a theory of respondeat superior.

Prior to submitting the case to the jury, the trial court entered a nonsuit in favor of State Farm. The jury found no negligence on the part of Ted Smith Floor Products and A to Z, and despite concluding that Rapp was negligent, determined that his negligence was not a substantial factor in causing Ruby Gustison's injuries. We affirm.

Appellant raises eleven issues on appeal which we will address seriatim, albeit not in the order presented:

1. Did the trial court err in curtailing plaintiff's cross-examination of defendants' medical expert concerning his disagreement with the opinions of plaintiff's treating physician?

2. Did the trial court err in permitting defendants' medical expert to read into the record hearsay opinions, where the expert used such hearsay information solely to bolster his own testimony and acted as a mere conduit of extrajudicial sources?

3. Did the trial court err in refusing to permit the rebuttal testimony of Edgar Lloyd, M.D.?

4. Did the trial court err in denying plaintiff's treating orthopedic physician the opportunity to testify?

5. Did the trial court err in refusing to give the requested standard jury instruction on prior conditions, set forth at Pa. SSJI (Civ) Section 6.30?

6. Did the trial court err in refusing to give the requested standard jury instruction on concurring causes, set forth at Pa. SSJI (Civ) Sections 3.26, 3.27 and 3.29?

7. Did the Trial Court err in instructing the jury that the defective condition causing the plaintiff's injuries must have existed on property owned or occupied by only one of the defendants, and that if plaintiff could prove to the jury upon whose property the condition existed, then the jury could find that defendant, and only that defendant, causally negligent, contrary to Pa. SSJI (Civ) Section 3.26?

8. Did the trial court err in refusing to permit plaintiff's medical experts to state their disagreement with the opinions given by defendants' expert concerning the extent of the plaintiff's injuries and their causal relationship to the accident?

9. Did the trial court err in its distribution of peremptory challenges by granting the plaintiffs a total of only four peremptory challenges, contrary to Pa.R.C.P. 221, while granting the defendants a total or twelve peremptory challenges?

10. Did the trial court err in excluding the testimony of a contractor who repaired the sidewalk on which plaintiff fell, thereby denying plaintiffs the opportunity to present evidence establishing ownership and control of the specific area where plaintiff was injured, responsibility for repairing such area, and the feasibility of prior repairs to such area, where such responsibility and feasibility had been specifically denied by defendants in answers to plaintiffs' requests for admission?

11. Did the trial court err in granting a nonsuit in favor of Defendant State Farm, where there was substantial evidence in the record from which a jury could find State Farm legally responsible for the acts or omissions of its agent, Defendant Gerald Rapp?

■ Our standard of review in determining whether a trial court erred in denying a new trial is whether the court committed an error of law controlling the outcome of the case,

or a comparable abuse of discretion when the ruling turns on the weight of the evidence. *Wasserman v. Fifth & Reed Hosp.*, 442 Pa.Super. 563, 575–76, 660 A.2d 600, 607 (1995).

■ Appellants' first issue concerns their ability to cross-examine Dr. Ellis Friedman, the defendants' expert witness. Like all the expert medical testimony in the case, Dr. Friedman's testimony, the only evidence presented by the defense, was delivered via videotape. A transcript of the testimony was also entered into evidence. Appellants claim that the trial court improperly curtailed their cross-examination of Dr. Friedman concerning his disagreement with Appellants' experts, his failure to mention that Mrs. Gustison had two chipped teeth, and how much compensation he received for testifying.

■ The scope and manner of cross-examination are within the trial court's discretion, and that discretion will not be disturbed absent its abuse or an error of law. *Commonwealth v. Wilson*, 538 Pa. 485, 506, 649 A.2d 435, 445 (1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995). In presenting their claims, Appellants refer to page numbers of the transcript of Dr. Friedman's videotaped testimony, which shows handwritten "X"s crossing out portions of the testimony. These are, presumably, the portions excised from the videotape at the trial court's behest and kept from the jury. However, there is nothing, no indication on the transcript itself and none in Appellants' Brief, to indicate the legal reason for the deletion, or any objection on Appellant's part at the time which would have elicited the trial court's explanation for its rulings. Appellants argue that no such specific objections were necessary because the trial court gave them an automatic exception to any adverse decision. However, it is clear that the trial court offered this expedient for the limited purpose of avoiding interruptions while defense counsel read into the record rulings on a motion in limine. The trial court did not intend that Appellants could avoid noting their exceptions on the record throughout the entire trial. In fact, a

review of the trial transcript demonstrates that the parties made objections at trial.

The docket reveals that a pre-trial conference was held on February 23, 1993, when, we may surmise, the evidentiary matters now complained of were resolved. However, there is no transcript of that hearing in the official record. It is Appellants' burden to provide a sufficient record to guide the appellate court in its examination of the issues raised. Appellants' failure to provide such a record and argument for the instant claim substantially hinders our ability to address this issue, which is, accordingly, waived. *See* Pa.R.A.P. 2117(c), 2119; *Smith v. Penbridge Assocs., Inc.*, 440 Pa.Super. 410, 427 n. 12, 655 A.2d 1015, 1024 n. 12 (1995).

■ Moreover, as to Appellants' contention that they were improperly prevented from presenting to the jury evidence of the $3,000 fee paid for Dr. Friedman's services, our examination of the record reveals, even if the issue had not been waived, that Appellants' position is baseless. First, Appellants elicited this testimony on recross-examination which went beyond the scope of redirect. Further, Appellants had already elicited on cross-examination that Dr. Friedman received $500 an hour for examining Mrs. Gustison, and $700 an hour for testifying. Thus, the jury had before it evidence that Dr. Friedman received compensation for his examination and testimony. There was therefore no error in the trial court's ruling.

■ Appellants' second argument is that the trial court erred in permitting Dr. Friedman to read medical reports of other experts into evidence. Specifically, they point to the medical findings of Dr. Thomas Hinrichs, Dr. Clifford Reed, and an unidentified nurse, none of whom testified at trial. Appellants claim that the testimony in question constitutes inadmissible hearsay.

■ A medical expert is allowed to express opinions based, in part, upon reports which are not in evidence, but which are customarily relied upon by other experts in the particular field. *Primavera v. Celotex Corp.*, 415 Pa.Super. 41, 47, 608

A.2d 515, 518 (1992), *alloc. denied,* 533 Pa. 641, 622 A.2d 1374 (1993). The expert must express such opinions as an expert, however, and is not permitted merely to parrot another's conclusions without bringing to bear on the matter his own expertise and judgment. *Id.* at 52, 608 A.2d at 521.

Dr. Friedman testified that the hospital records, medical reports, and office notes of various physicians that he relied upon are of the type normally used by other experts in the field. (Exhibit 19 at 45–46, 171–72). Our review of Dr. Friedman's testimony indicates that he did not merely restate the findings and opinions of others, but permissibly relied upon them in formulating his own expert opinion. Dr. Friedman's opinions were based not only on the documents enumerated above, but also on x-rays and test results, as well as his own clinical evaluation of Mrs. Gustison.

Among the documents reviewed by Dr. Friedman were the records of Dr. Emkey, which indicated that Mrs. Gustison had been complaining of general joint and muscle pain, specifically in her hands, neck, leg and lower back, since 1983, and that he had administered numerous cortisone injections to relieve her discomfort. However, she did not complain of any back pain during two visits to Dr. Emkey and his associate made within several weeks after her fall.

Dr. Friedman also testified to reliance upon reports prepared by Dr. Reed, a neurologist, who, upon examining Mrs. Gustison in April of 1991, found that the nerves leading from her back to the muscles in her leg were normal. Dr. Friedman also noted that Dr. Craig Johnson, who performed surgery on Mrs. Gustison's back in March of 1992, indicated in his operative report that there was no evidence of anything associated with trauma or any prior injury to her spine. Although Mrs. Gustison was readmitted to the hospital approximately ten days after the surgery complaining of severe pain in her leg, Dr. Friedman noted that Dr. Hinrich, a rehabilitative specialist, had commented in his report of the case that he believed many of Mrs. Gustison's problems were related to poor pain adjustment to normal post-operative

hypersensitivity. Dr. Friedman also related that certain nurses' notes contained the same observation.

Based upon his review of all of the various clinical and laboratory results, Dr. Friedman opined that Mrs. Gustison's injuries were not related to her fall, but stemmed from degenerative spinal problems which caused pain in her back and legs beginning in the 1980's. Addressing her hand injury, Dr. Friedman stated that it, too, did not result from the fall, but from arthritis and the numerous cortisone injections which also began in the 1980's.

Because this case involved an alleged aggravation of pre-existing conditions, the medical reports of the experts who examined and treated Mrs. Gustison both before and after the fall were critical. However, Dr. Friedman not only conducted an extensive review of Ms. Gustison's medical history, but also performed his own medical examination of her. We hold that the medical reports relied upon by Dr. Friedman were not inadmissible hearsay in that they only provided partial support and aid to the defense expert in arriving at his own expert opinion. *See Id.* (collecting cases).

■ Appellants' third point of error is that the trial court erred in denying their rebuttal evidence. Dr. Friedman testified that 93% of his practice consisted of performing surgery and treating orthopedic patients. In rebuttal, Appellants sought to present Dr. Edgar Lloyd, who would have testified that Dr. Friedman did not regularly perform orthopedic surgery at Reading Hospital, the only hospital with which Dr. Friedman is affiliated. The trial court excluded this evidence on the basis that it should have been presented during Appellants' case-in-chief, and because it was extrinsic proof of a collateral matter.

■ The admissibility of rebuttal evidence is at the trial court's discretion. *Remy v. Michael D's Carpet Outlets*, 391 Pa.Super. 436, 444, 571 A.2d 446, 450 (1990), *aff'd*, 536 Pa. 1, 637 A.2d 603 (1993). Here, the trial court refused to allow the testimony because it was not, in fact, rebuttal evidence, but a challenge to Dr. Friedman's qualifications. Moreover, Appel-

lants had already established during cross-examination that Dr. Friedman did not perform surgery often.

In addition, a witness may not be contradicted upon a collateral matter, *Commonwealth v. Johnson*, 536 Pa. 153, 159, 638 A.2d 940, 942, (1994), that is, one having no relationship to the issue on trial. *Id.* at 159, 638 A.2d at 943. Whether Dr. Friedman regularly or rarely performed orthopedic surgery at Reading Hospital or elsewhere was irrelevant to the question of whether Appellees were liable to Appellants. Thus, the court did not abuse its discretion in excluding the proffered rebuttal evidence.

Appellants' fourth contention is that the trial court improperly excluded the testimony of Dr. Leonard Marchinski, who treated Mrs. Gustison's injured hand. Although Appellants do not cite to the record, they contend that Dr. Marchinski was not allowed to testify because of a violation of the rules of discovery, specifically Pa.R.C.P. 4003.5(b).[1]

Appellants contend that the defense had notice that Dr. Marchinski would be called as a witness because their Pretrial Memorandum listed him in that capacity. Contrary to Appellants' allegation, Dr. Marchinski is not named as a prospective witness. Rather, the Memorandum indicates only that Dr. Marchinski's records custodian might be called.

Once again, the record is devoid of any ruling that Dr. Marchinski's testimony would not have been admitted at trial. Appellants' only citation to the record concerns the trial court's refusal to admit Dr. Marchinski's medical bills. Accordingly, this issue is waived.

Next, Appellants take exception to the trial court's decision not to give the standard jury charge on prior conditions. The standard instruction provides:

The plaintiff is entitled to recover damages for all injuries which the defendant's negligence was a substantial factor in

---

1. Pa.R.C.P. 4003.5(b) reads in pertinent part as follows:

If the identity of an expert witness is not disclosed in compliance with subdivision (a)(1) of this rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action ...

producing. The defendant's negligence need not be the sole cause of the injuries; other causes may have contributed to producing the final result. The fact that some other factor may have been a contributing cause of an injury does not relieve a defendant of liability, unless you find that such other cause would have produced the injury complained of independently of his negligence. Even though prior conditions or concurrent causes may have contributed to an injury, if defendant's negligence was a substantial factor in producing the injury, defendant is liable for the full amount of damages sustained, without any apportionment or diminution for the other conditions or causes.

Pa. SSJI (Civ) 6.30.

Instead, the trial court explained that any negligence on Appellees' part must have been a substantial factor in bringing about Appellants' loss, and then continued:

Under the law, if you were to find that the plaintiff had pre-existing medical conditions and that the acts of the defendant aggravated these pre-existing conditions, then compensation may be awarded by the jury for the increased damage caused by the actions of the defendant or inactions of the defendant. However, the award against this defendant could only be for the increase the jury finds in its sole discretion is caused by that defendant. Symptoms that are caused solely by someone's pre-existing condition or which the jury may find are caused by a natural progression of a plaintiff's pre-existing condition, those can't be recovered against the defendant. As in all matters, the burden is on the plaintiff to prove by the preponderance of the evidence that she has actually suffered an increase of the pre-existing condition and is not merely suffering from the pre-existing condition itself or the natural progression of the pre-existing condition.

(N.T. at 494–95.)

Appellants contend that the trial court's charge was in direct contradiction to the standard instruction. They argue that upon a showing of existing prior conditions, Appellees

were not relieved from liability unless they proved that some other, independent cause would have produced Mrs. Gustison's injuries absent their negligence.

■ In reviewing jury instructions, we must view the charge in its entirety, taking into consideration all the evidence of record and determine whether or not any prejudicial error was committed. *Lockhart v. List,* 542 Pa. 141, 147–48, 665 A.2d 1176, 1179 (1995). Error will be found only where the jury was probably misled by the charge, or where an omission in the charge amounted to a fundamental error. *Id.*

Comparing the standard instruction with the instruction given by the trial court does not lead to the conclusion that the court erred. In its entirety, the jury instruction in this case does not conflict with the standard instructions. The trial court explained the substantial factor concept, and clearly stated that even though Mrs. Gustison had a pre-existing condition, an aggravation of that condition by Appellees could be compensable. We hold that the trial court did not err in its instruction on prior conditions.

■ Appellants also take exception to the trial court's failure to charge on concurring causes. Specifically, they object to the instruction that follows.

[I]f the jury were to find a discrepancy in the level of the sidewalk slabs to have been the result of a negligent omission to act and if the jury were to also find this to be the cause of the plaintiff's fall and subsequent hurt and harm, then it becomes critical to know upon whose property this condition existed.

Now, this condition must have existed either on the A to Z property owned by Ted Smith Floor Products Company or on the Gerald Rapp property. It can't be on both, and since neither defendant can be liable in the law for the conduct of someone else or the other defendant here, the plaintiff has the burden of satisfying the jury by a preponderance of the evidence upon whose property the condition existed. If the plaintiff has met that burden, then the jury may find the property owner or occupier causally negligent.

If it can't make a decision, then the jury would have to find for all the defendants.

(N.T. at 492–93.)

Appellants assert that the court should have given the concurring cause standard instruction as set forth in Pa. SSJI 3.26, 3.27, and 3.29, because the facts in issue presented a "classic case" of the negligent inaction of two or more parties.

Even if a concurrent cause instruction should have been given, any error resulting from its omission is harmless in light of the jury's finding that Rapp's negligence was not a substantial factor in bringing about Appellants' harm. *See James v. Nolan,* 418 Pa.Super. 425, 614 A.2d 709 (1992) (even if foreseeability charge was erroneous, error was harmless when jury found that defendant's negligence was not a substantial factor in causing harm). Thus, Appellants were not prejudiced because the relationship between their injuries and negligence on the part of any of the Appellees would not change based solely on the number of negligent parties. Thus, Appellants' contention is meritless.

Appellants' seventh allegation is that the trial court erred in instructing the jury that only one defendant could be negligent contrary to Pa. SSJI (Civ) Section 3.26. As has already been explained, any error resulting from the court's instruction is harmless.

Appellants' eighth assignment of error concerns the trial court's supposed preclusion of portions of Dr. Johnson's testimony. This witness, Mrs. Gustison's treating neurosurgeon, testified that the fall aggravated her pre-existing back injuries. Appellants claim that the jury should have been able to hear Dr. Johnson's evaluation of Dr. Friedman's opinion, that it was physically impossible for the fall to have aggravated Mrs. Gustison's pre-existing injuries.

Appellants do not indicate why the trial court struck this portion of Dr. Johnson's testimony. Nor do they cite to any portion of the record where the trial court ruled on this point. From our review of the record, it appears that the court precluded the testimony based upon discovery violations.

However, we have no way of knowing the basis for the court's ruling. Because Appellants have failed to provide a sufficient record for appellate review, this issue is waived. Pa.R.A.P. 2117(c), 2119; *Smith,* 440 Pa.Super. at 427 n. 12, 655 A.2d at 1024 n. 12.

Appellants also claim that the trial court erred in striking portions of the testimony given by Dr. Ronald Emkey, Mrs. Gustison's treating physician for approximately nine years. The stricken testimony called into question Dr. Friedman's claim that Mrs. Gustison's hand problems were related to cortisone injections she had received.

The record indicates that the court precluded this area of Dr. Emkey's testimony based upon a violation of the discovery rules. However, Appellants do not argue that the trial court erred in ruling that a discovery violation occurred. Instead, they claim, without supporting authority or rationale, that the trial court erred because Dr. Emkey's testimony affected Dr. Friedman's credibility. Without a contention that the trial court erred in its ruling, we cannot hold that the court abused its discretion in striking Dr. Emkey's response to Dr. Friedman's opinion.

Appellants' ninth issue is that the trial court erred in granting them only four peremptory challenges while allowing Appellees a total of twelve. Appellants contend that they should have received eight challenges, and Appellees sixteen. Appellants, who are over seventy years old, also allege that they were prejudiced because the jury contained no member over sixty-one years of age, and nine members under forty.

The number of peremptory challenges in a civil case is governed by the Rules of Civil Procedure:

> Each party shall be entitled to four peremptory challenges.... In order to achieve a more fair distribution of challenges, the court in any case may
>
> (a) allow additional peremptory challenges and allocate them among the parties;

(b) where there is more than one plaintiff or more than one defendant or more than one additional defendant, consider any one or more of such groups as a single party.

Pa.R.C.P. 221. The Note to Rule 221 clearly provides that the trial court is in the best position to determine the number of challenges that will be allowed. *See Leaphart v. Whiting Corp.*, 387 Pa.Super. 253, 564 A.2d 165 (1989), *alloc. denied*, 525 Pa. 619, 577 A.2d 890 (1990).

Appellants' argument fails for a number of reasons. First, there is no allegation that Appellees based their challenges on the age of the perspective jurors. Second, there is no evidence in the record of the jurors' ages. Third, Appellants cite no authority as to how the age of the jurors unfairly affected the outcome of the case. Finally, based upon the parties' respective interests, it was not erroneous to treat Appellants as a single party and Appellees as separate parties. We hold that Appellants have failed to establish any abuse of the trial court's discretion in distributing peremptory challenges.

■ Appellants' tenth contention is that the trial court erred in excluding the testimony of Tom Bertolet, who performed repairs to the sidewalk subsequent to Mrs. Gustison's fall. Appellants offered Bertolet's testimony in order to demonstrate both that repair of the sidewalk was feasible, and that Ted Smith Floor Products was responsible for its care and control.

As stated earlier, evidence is admitted at the discretion of the trial court, and absent any abuse of that discretion, we will not disturb its rulings. Appellants' offer of proof indicated that Ted Smith Floor Products paid Bertolet approximately $3700 to correct the misalignment of the sidewalk slabs after Mrs. Gustison's fall. The trial court precluded Bertolet from testifying based upon the testimony of the owner of Ted Smith Floor Products, Samuel Negrelli, who had already admitted that if he had known about the defect, repairs would have been feasible. Thus Bertolet's testimony would have been cumulative.

Moreover, whether Bertolet should have been allowed to testify is irrelevant based upon our disposition of this appeal, as his testimony would not have addressed whether any of the parties' negligence was a substantial factor in causing Appellants' injuries. Therefore, we need not address the merits of this issue.

Finally, Appellants contend that the grant of a nonsuit in favor of State Farm was erroneous. Appellants brought an action against State Farm on the basis that it was responsible for Rapp's inactions under the theory of respondeat superior. Based upon the jury's finding that Rapp's negligence was not a substantial factor in bringing about Appellants' harm, we need not address this issue.

Judgment affirmed.

McEWEN, P.J., concurs in the result.