William HARRIS, Jr., Appellant,

v.

PHILADELPHIA FACILITIES MAN-
AGEMENT CORPORATION and
Danella Companies, Inc.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2014.

Decided Dec. 2, 2014.

Reargument Denied Jan. 12, 2015.

Joseph C. Murray, Philadelphia, for appellant.

Brian A. Kint, Philadelphia, and Stephen J. Magley, Pittsburgh, for appellees.

BEFORE: ROBERT SIMPSON, Judge, PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge McCULLOUGH.

William Harris, Jr. (Appellant) appeals from the August 7, 2013 order of the Philadelphia County Court of Common Pleas (trial court) denying Appellant's post-trial motions for a new trial. For the following reasons, we affirm.

Philadelphia Facilities Management Corporation and Danella Companies, Inc. (Appellees) entered into a contract with Philadelphia Gas Works to work on a gas main located within the North Philadelphia campus of Temple University. Appellees excavated the intersection of Broad and Diamond Streets for the gas main work and created irregularities in the roadway when the excavation at the intersection was temporarily patched. On August 14,

2010, Appellant was involved in a single-vehicle motorcycle accident at the intersection. He suffered injuries, the most severe of which were displaced and impacted fractures of his left tibia and fibula. Officer Julio Caserio (Officer Caserio) and Officer Matthew Hassel (Officer Hassel) of the Temple University police department responded to the accident.[1] Officer Hassel prepared a police accident report[2] but did not testify at trial.[3] A jury trial was held from February 4, 2013, to February 12, 2013.

Appellant filed a motion *in limine* seeking to preclude portions of the police accident report prepared by Officer Hassel. In particular, Appellant sought the exclusion of Officer Hassel's opinions regarding speeding, improper careless turning, driver inexperience, Appellant being distracted while driving, and other improper driving actions. (Reproduced Record (R.R.) at 340a, 342a, 352a.) During the trial, the trial court addressed Appellant's motion, stating:

> [Trial court]: [C]ounsel makes reference to things in the police report that are observations by the officer such as the location of the accident, the time of the accident, things of that nature.
>
> Generally speaking, police reports are inadmissible hearsay. *You may make reference to some of those things.*
>
> In this case the issue of the pothole is the ultimate issue for the jury to decide. It would be unfair to allow any reference to the police report at all and [there] will be no reference to the police report at all.

(R.R. at 361a–62a) (emphasis added). Rather than excluding only the portions of the police accident report requested by Appellant, the trial court excluded all of Officer Hassel's opinions as to the cause of the accident.

Appellant testified that he was riding his motorcycle at ten to fifteen miles per hour as he approached Broad Street to make a left turn when he ran over some bumps and lost control of the motorcycle, causing it to wobble and eventually fall in the middle of Broad Street. The motorcycle landed on Appellant's leg, breaking it. Appellant stated that he did not slide under the motorcycle. He acknowledged that he did not see a trench in the road until after he was helped out of the middle of the street, but he was positive that the trench caused the accident. Appellant described the trench as one in a zigzag pattern that spanned the length of the crosswalk on Diamond Street. Appellant testified that it was obvious that he ran over something on his motorcycle, because both of his wheels went into the trench and he hit a number of potholes when inside of the trench. He noted that he had a 1–or 2–inch scratch on his left forearm as a result of the accident and stated that he went over the motorcycle instead of sliding. (R.R. at 384a–88a, 390a–91a, 393a–94a, 407a–08a, 426a, 454a–55a.).

John Posusney (Posusney), a civil structural engineer, testified as an expert witness for Appellant, stating that he could see the depression, i.e., the trench, in a photograph of the accident site admitted

---

1. Neither officer was employed by Temple University at the time of trial.

2. Although the police accident report is not of record, Appellant asserted at trial that the police accident report contains Officer Hassel's observations and opinion that a pothole caused the accident.

3. Officer Hassel moved to New Jersey, and, thus, could not be subpoenaed to testify at trial. (R.R. at 344a–45a.) Appellant also could not reach an agreement with him to testify. (R.R. at 1053a.)

into evidence. Posusney opined that the trench was the cause of the accident, but he acknowledged that the conclusions in his report were based solely on Appellant's and Appellant's sister's descriptions of the potholes that were in the admitted photographs. (R.R. at 521a–22a, 534a, 545a.).

Officer Caserio testified that he and Officer Hassel responded to the accident. Officer Caserio said that, by the time they reached the accident scene, Appellant's motorcycle was in the center of the intersection and Appellant was half sitting/half lying down off to the side. Officer Caserio stated that he investigated the intersection after Appellant told him that he hit a pothole. However, Officer Caserio did not see any severe potholes. He added that there was a minimal construction trench, if there was one at all, on Diamond Street. Officer Caserio testified that Officer Hassel wrote the police accident report; Officer Caserio stated that he remembered the accident and that he reviewed the police accident report prior to testifying to check for any specific details that he might not have recalled. (R.R. at 778a–80a, 783a, 785a, 789a.).

William J. Martin (Martin), Appellees' accident reconstruction expert, testified that he reviewed the accident report; three photographs taken by Appellant's sister the night of the accident; transcripts of the depositions of Appellant, Appellant's sister, and Officer Caserio; Posusney's report; vehicle data regarding Appellant's motorcycle type; aerial photographs from Google Earth; and United States Naval Observatory data concerning sunrise and sunset in Philadelphia. Martin concluded that the accident occurred slightly before 8:00 p.m., when there still would have been sunlight. Martin was familiar with the route and speed that Appellant alleged he was travelling at the time of the accident and the damage to Appellant's motorcycle. Martin visited the intersection, took photographs, made measurements, and created a scaled aerial photograph of the accident scene. Martin opined that no potholes or breakouts in the road on Diamond Street would have affected the operation of the motorcycle. Martin testified that the trench was only slightly depressed and that the accident did not occur at the trench but beyond it. (R.R. at 810a–11a, 820a, 841a.).

Martin believed that Appellant was involved in a "low-side" accident, explaining that low-side accidents occur when the bottom of the motorcycle slides away from the operator. (R.R. at 832a.) He further described low-side accidents as follows:

[Appellees' counsel]: What causes a low-side accident?

[Martin]: A low-side accident is caused by—can be caused by several factors; one being attempting to brake too hard with the rear wheel while leaning into a curb.

And what that can do is that can lock the wheel up and where it will, then, slide out from under you and cause you to go down.

It can be from hitting a slippery type surface, say an oil slick, with your rear wheel as you're, again, leaning into a turn, where anything that's going to break the friction between the rear wheel and the road and cause it to slide out from beneath you, that is a low-side. And that's the only time that you will stay beneath the motorcycle.

(R.R. at 832a.) Martin's ultimate opinion was that Appellant was involved in a low-side accident that could only have been caused by driver error. (R.R. at 842a, 875a, 888a–89a.)

In rebuttal, Appellant presented the testimony of Donald Thomas, Ph.D. (Dr. Thomas), an expert in biomechanics. Dr. Thomas testified that Appellant's version

of the accident was probable because the motorcycle's final location in the middle of Broad Street was consistent with Appellant's version of the facts. He opined that Appellant was attempting to regain balance and the bike had almost stopped at the time that it fell on Appellant in the middle of Broad Street. Dr. Thomas added that there was no injury on the exterior of Appellant's left leg consistent with a low-side accident. (R.R. at 1087a–88a.).

At the conclusion of the trial, the jury returned a verdict in favor of Appellant in the amount of $180,000.00, finding Danella Companies, Inc. 53% negligent and Appellant 47% negligent. The trial court reduced the verdict by 47%, which resulted in an award of $95,400.00 to Appellant. Subsequently, Appellant filed a motion for post-trial relief and a new hearing. Appellant then filed a supplemental motion for a new trial. Appellees filed a motion to strike Appellant's supplemental motion for

a new trial, alleging it was untimely filed. After a hearing on August 7, 2013, the trial court denied Appellant's motion for post-trial relief and supplemental motion for new trial.

Appellant filed his statement of errors complained of on appeal, specifically arguing that the trial court erred in: allowing Martin to testify without establishing the facts and data in the record on which his opinion was based; refusing to allow cross-examination of Officer Caserio and Martin with the police accident report; and precluding reference to the police accident report by Posusney and Dr. Thomas.[4]

In its 1925(a) opinion, the trial court stated that Martin specifically referenced facts and data on which he relied as the basis of his opinions pursuant to Pennsylvania Rule of Evidence (Pa.R.E.) 705.[5] Citing section 3751(b)(4) of the Vehicle Code, 75 Pa.C.S. § 3751(b)(4),[6] and Pa. R.E. 612,[7] the trial court next stated that

---

**4.** Appellant also argued that the trial court erred in: permitting photographs of the model of motorcycle ridden by Appellant; refusing to instruct the jury as requested by Appellant pursuant to the principles of *St. Clair v. B & L Paving Company*, 270 Pa.Super. 277, 411 A.2d 525 (1979); and refusing to find that the evidence did not support the jury's verdict of 47% comparative negligence and in only assessing $180,000.00 in monetary damages. Appellant further asserted that his claims in his supplemental post-trial motion should be considered because the original post-trial motion was timely filed and the right to supplement the motion was reserved. However, the trial court rejected these arguments, and Appellant has not raised these issues on appeal to this Court.

**5.** Pa.R.E. 705 states as follows: "The expert must testify in terms of opinion or inference and give the reasons therefor; however, the expert must testify as to the facts or data on which the opinion or inference is based." We note that a new version of the Pa.R.E. rescinded and replaced the older version of the Pa.R.E. on January 17, 2013, and was effective March 18, 2013. The jury trial was held in February 2013, and, thus, the older version

of the Pa.R.E. was in place at the time of trial. Any reference to the Pa.R.E. in this opinion is to the version in effect prior to March 18, 2013.

**6.** Section 3751(b)(4) of the Vehicle Code provides that "[t]he copy of the [police] report shall not be admissible as evidence in any action for damages or criminal proceedings arising out of a motor vehicle accident." 75 Pa.C.S. § 3751(b)(4).

**7.** Pa.R.E. 612 provides in relevant part:

   (a) **Right to refresh memory and production of refreshing materials.** A witness may use a writing or other item to refresh memory for the purpose of testifying. If the witness does so, either—
   (1) while testifying, or
   (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
   an adverse party is entitled to have the writing or other item produced at the hearing, trial or deposition, to inspect it, to cross-examine the witness on it and to introduce in evidence those portions that relate to the testimony of the witness.

any cross-examination of Officer Caserio based on the police accident report was properly excluded because Officer Caserio did not author the police accident report and did not use it to refresh his recollection while testifying during trial. The trial court also concluded that any cross-examination of Martin based on the police accident report and any testimony concerning the police accident report from Posusney and Dr. Thomas was properly excluded for the same reasons.

On appeal to this Court,[8] Appellant argues that a new trial should be granted because: Martin speculatively testified to the cause of the accident without identifying the underlying facts or data necessary to support such conclusions; the trial court abused its discretion in not allowing Appellant to cross-examine Officer Caserio and Martin with the police accident report; and the trial court abused its discretion in not allowing Posusney and Dr. Thomas to refer to the police accident report in their testimony.

## Martin's Testimony

■■■ Appellant first argues that a new trial should be granted because Martin's testimony was speculative and Appellees failed to establish the facts and/or data on which Martin's opinions were based or that his opinions were based on facts of record. Pa.R.E. 705 provides that "[t]he expert must testify in terms of opinion or inference and give the reasons therefor; however, the expert must testify as to the facts or data on which the opinion or inference is based." "The admission of testimony from an expert witness is within the sound discretion of the trial court." *Peden v. Gambone Brothers Development Compa-*

*ny,* 798 A.2d 305, 312–13 (Pa.Cmwlth. 2002). "[E]xpert opinion testimony is proper if the facts upon which it is based are of record." *Commonwealth v. Rounds,* 518 Pa. 204, 542 A.2d 997, 999 (1988).

Martin identified the facts of record upon which he relied during his testimony. For example, he specifically stated that he reviewed vehicle data for the model 2007 Suzuki GSX–R600 motorcycle, aerial photographs of the accident location from Google Earth, and U.S. Naval Observatory data for sunrise/sunset in Philadelphia. (R.R. at 810a–11a.) Martin also testified that he visited the accident site and performed an inspection on August 22, 2012; he described his inspection, and he explained his photographs, the aerial photograph, and the photographs taken by Appellant's sister of the accident site to the jury. (R.R. at 812a–30a.).

Martin further identified the facts on which he relied for the formulation of his opinions: "[P]hotographs that I had [that] did not show any potholes that would affect a vehicle that's traveling eastbound on Diamond Street," and "[t]he evidence of his injuries, being the abrasions on the left arm and the motorcycle falling on his left leg, is consistent only with a low-side-bike-slide-out-from-beneath-you accident." (R.R. at 841a–42a.).

Appellant's reliance on *Commonwealth v. Paskings,* 447 Pa. 350, 290 A.2d 82 (1972), is misplaced. In *Paskings,* the trial court excluded the testimony of an expert who stated that his opinion was based on notes of testimony from a previous trial that were not read into the record of the current proceeding. Ultimately, our Su-

*Id.*

8. Our scope of review of a trial court's denial of a motion for post-trial relief is limited to a determination of whether the trial court

abused its discretion or committed an error of law. *Ryals v. City of Philadelphia,* 848 A.2d 1101, 1103 n. 3 (Pa.Cmwlth.2004).

preme Court noted that "it is essential that the salient facts relied upon as the basis for the opinion be in the record." *Id.* at 85. Thus, the Supreme Court concluded that "because none of the notes of testimony from the previous trial were read into this record in open court, the jury could not know upon what facts the expert had based his opinion. The evidence, therefore, was properly excluded." *Id.*

Contrary to the situation in *Paskings,* Martin relied on evidence in the record and specifically indicated as much. Moreover, Martin only stated that "operator error" was the cause of the accident and did not identify a specific error; therefore, Martin did not need to identify specific facts in the record supporting *specific* operator errors but just facts supporting that the accident was *low-side* in nature. Because Martin testified that he relied on facts and data in the record, the trial court properly concluded that his testimony did not support Appellant's request for a new hearing.

### Cross–Examination of Officer Caserio and Martin with Police Accident Report

■ Next, Appellant argues that the trial court abused its discretion in not allowing Officer Caserio and/or Martin to be cross-examined with the police accident report. Pa.R.E. 612 provides in relevant part:

(a) **Right to refresh memory and production of refreshing materials.** A witness may use a writing or other item to refresh memory for the purpose of testifying. If the witness does so, either—

(1) while testifying, or

(2) before testifying, *if the court in its discretion determines it is necessary in the interests of justice,*

an adverse party is entitled to have the writing or other item produced at the hearing, trial or deposition, to inspect it, to cross-examine the witness on it and to introduce in evidence those portions that relate to the testimony of the witness.

*Id.* (emphasis added). "The scope of cross-examination lies largely within the discretion of the trial court, whose ruling will not be reversed absent a clear abuse of discretion or error of law." *Commonwealth v. Karenbauer,* 552 Pa. 420, 715 A.2d 1086, 1095 (1998).

■ Initially, we note that Officer Caserio testified from his own independent recollection and never used the police accident report to refresh his recollection while he was testifying at trial. Officer Caserio mentioned the police accident report *for the first time during cross-examination* as follows:

[Appellant's counsel]: Okay. And you didn't prepare any report at all about this accident, correct?

[Officer Caserio]: No. My partner wrote the actual report.

[Appellant's counsel]: Okay. And you're testifying about this incident on August 14th, 2010, and you remember these things that you're telling the jury about?

[Officer Caserio]: *What I'm testifying to is what I know.*

[Appellant's counsel]: What you testified to before. Yes?

[Officer Caserio]: Yes.

[Appellant's counsel]: Do you remember details of every accident that you handled in 2010?

[Officer Caserio]: Not every accident, no.

[Appellant's counsel]: Okay. Why is it that you remember this one; how is it?

[Officer Caserio]: Because I have *reviewed the accident report.*

[Appellant's counsel]: So, to get the information that you just testified about, you reviewed the accident report?

[Officer Caserio]: Yes.

\* \* \*

[Appellant's counsel]: Now, when you refreshed your recollection with regard to potholes and uneven roadway surface, did you look at the police report to remember those things?

[Officer Caserio]: I reviewed the report, yes, *to see if it was [sic] more specific details—*

[Appellant's counsel]: Okay.

[Officer Caserio]: *—that I may not have remembered.*

(R.R. at 783a–85a) (emphasis added).

Based on this exchange, it is apparent that Officer Caserio did not quote from or convey the contents of the police accident report during his testimony. Rather, as he acknowledged during cross-examination, Officer Caserio used the police accident report to confirm his recollection of Appellant's accident and then testified as to his *own independent recollection* of that night. Appellees did not attempt to introduce any facts or opinions from the police accident report at any time during Officer Caserio's testimony. Because Officer Caserio used the police accident report only to refresh his recollection prior to testifying, it was within the trial court's discretion to allow cross-examination with it *only* if "it [was] necessary in the interests of justice." Pa.R.E. 612(a)(2). Because the report was inadmissible hearsay and considering Appellant's motion to preclude less favorable portions of the police accident report, the trial court concluded that it would be prejudicial to allow any reference to other portions of the police accident report that concerned the cause of the accident, which was the ultimate issue to be determined by the jury.

Appellant's reliance on *Boucher v. Pennsylvania Hospital*, 831 A.2d 623 (Pa.Super.2003), is also misplaced. In *Boucher*, the trial court precluded the appellant from cross-examining the appellee's expert, a Dr. Stavis, with a report by a Dr. Boyko. Dr. Stavis testified at trial and "flatly denied that any evidence of cephalohematoma exists in any of the materials he reviewed for trial[.]" *Id.* at 629 (citation and quotations omitted). However, one of the documents that Dr. Stavis reviewed, Dr. Boyko's report, stated that "there was evidence of 'resolving cephalohematoma'." *Id.* (citation and quotations omitted).

On appeal, our Superior Court determined that Dr. Boyko's report was inadmissible hearsay. However, the court concluded that the trial court abused its discretion in not allowing Dr. Boyko's report to be used to impeach the credibility of Dr. Stavis on cross-examination, because Dr. Stavis specifically denied that there was any evidence of cephalohematoma in any evidence that he reviewed, which was not the case. The court further concluded:

> Where an expert report is disclosed to another expert and reviewed by that expert, and then by his testimony the expert mischaracterizes that report, either explicitly or by implication, we conclude that basic fairness and the entitlements of cross-examination permit the disclosure of that report to the degree necessary to expose the mischaracterization by the testifying expert.

*Id.* at 632. Thus, the court concluded that the trial court abused its discretion in not allowing cross-examination of Dr. Stavis with Dr. Boyko's report.

However, the situation in *Boucher* is distinguishable from this case, thus rendering *Boucher* inapplicable. Officer Caserio did not testify concerning the content of the report; thus, the police accident

report is of no use in impeaching the credibility of Officer Caserio and basic fairness does not dictate its admission.

■ Boucher also does not support Appellant's argument that the trial court abused its discretion in not allowing cross-examination of Martin with the police accident report. Having successfully motioned to preclude portions of that report unfavorable to him, Appellant attempted to "impeach" Martin with statements in the report indicating that irregularities existed in the roadway at the intersection. However, as the trial court observed, all parties acknowledged the existence of roadway irregularities.

■ An expert is permitted to reasonably rely on a police accident report in reconstructing the accident pursuant to Pa.R.E. 703, which states as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

*Id.*

Importantly, Martin did not mischaracterize anything found within the report. Martin, like Officer Caserio, offered no testimony concerning the content of the police accident report, and Appellees did not attempt to have the police accident report admitted into evidence. Martin's sole reference to the police accident report was that he "reviewed the accident report," when questioned by Appellee. (R.R. at 810a.) Martin neither stated that the police accident report was central to his opinion nor did he quote the police accident report in any of his testimony.

Accordingly, the trial court properly precluded any cross-examination of Officer Caserio and Martin from the police accident report.

Appellant also mischaracterizes the Superior Court's decision in *Fisher v. North Hills Passavant Hospital,* 781 A.2d 1232 (Pa.Super.2001), as holding that "appellants should have been permitted to cross-examine a witness regarding her review of a report not in evidence." (Appellant's brief at 53.) In *Fisher,* a patient and his wife filed a medical malpractice action against a hospital. The trial court precluded evidence of an incident report and an accompanying memorandum stating that a nurse had been suspended and also precluded any questioning of the nurse regarding her suspension. The Superior Court "agree[d] with the trial court's assessment regarding the admission of the incident report and memorandum[,]" *id.* at 1234, and found that the prejudicial nature of the incident report and memorandum outweighed the probative effect. Nevertheless, the court held that the trial court erred in refusing to allow questions on cross-examination of the nurse regarding her suspension. In so holding, the Superior Court explained that testimony regarding the nurse's suspension was admissible as evidence of the nurse's possible bias against the patient's wife, who had made a complaint against her.

■ In this case, Appellant does not seek to question Officer Caserio or Martin regarding potential bias. Rather, Appellant seeks to introduce information from a police accident report written by Officer Hassel, who was not present and did not testify at trial, relating to the cause of the accident, an issue for the jury to determine. As the Superior Court held in *Fisher,* incident reports should be excluded if they are prejudicial in nature. Thus, in ruling on Appellant's motion, the trial

court properly determined that all of the opinions in the police accident report regarding the cause of Appellant's accident should be excluded as hearsay. Therefore, the trial court did not abuse its discretion in precluding any cross-examination of either Officer Caserio or Martin with the police accident report.

### Reference to Opinions Found in Police Accident Report by Appellant's Experts

■ Appellant further argues that the trial court abused its discretion in not allowing Appellant's expert witnesses Posusney and Dr. Thomas to refer to the police accident report during their testimony, and, thus, a new trial is required.[9] Appellant contends that Posusney and Dr. Thomas should have been able to testify regarding the police accident report, because experts may reference documents otherwise inadmissible pursuant to Pa. R.E. 703, which allows an expert to rely on "facts and data" not necessarily admissible if of the type "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."

As we noted in *Luzerne County Flood Protection Authority v. Reilly*, 825 A.2d 779 (Pa.Cmwlth.2003):

> The law in Pennsylvania is clear, an expert is permitted to express opinions formulated, in part, upon materials which are not in evidence, but which are customarily relied upon by experts in the particular field. The expert may incorporate a non-testifying expert's findings into his own express opinion, however, he is not permitted to merely restate another's conclusions without espousing his own expertise and judgment.

*Id.* at 784 (citation and quotations omitted).

■ In this case, the opinions Appellant sought to have entered into evidence are not opinions of Appellant's experts but, rather, are the opinions of Officer Hassel set forth in the police accident report. As section 3751(b)(4) of the Vehicle Code states, "[t]he copy of the [police] report shall not be admissible as evidence in any action for damages or criminal proceedings arising out of a motor vehicle accident." 75 Pa.C.S. § 3751(b)(4). " 'A police report prepared by an officer who is not a witness to the accident is inadmissible hearsay evidence and should not be admitted into evidence. Nor should a party be able to get such a report into evidence in an *indirect manner.* ' " *Rox Coal Company v. Workers' Compensation Appeal Board (Snizaski)*, 570 Pa. 60, 807 A.2d 906, 914 (2002) (quoting *Holland v. Zelnick*, 329 Pa.Super. 469, 478 A.2d 885, 888 (1984)) (emphasis added).

■ Here, Appellant attempts to do exactly what our Supreme Court found is inappropriate. Like Officer Caserio, Officer Hassel did not witness the accident. Officer Hassel also did not testify, and, thus, all of his *opinions* in the police accident report are inadmissible hearsay. Although, under Pa.R.E. 703, Posusney and Dr. Thomas would have been permitted to consider facts or data in the police accident report in rendering their opinions, the rule does not permit Appellant to indirectly admit from the police accident report Officer Hassel's *opinions* regarding the cause of the accident through the testimony of Posusney and Dr. Thomas. *See Gustison v. Ted Smith Floor Products, Inc.*, 451

---

**9.** As the trial court observed in ruling on Appellant's motion *in limine,* the cause of the accident was the ultimate issue for the jury to decide. Nevertheless, the trial court *allowed* reference to the police accident report regarding factual observations of Officer Hassel that included the location and time of the accident. (R.R. at 361a–62a.)

Pa.Super. 442, 679 A.2d 1304, 1309 (1996) (although a medical expert "is allowed to express opinions based, in part, upon reports which are not in evidence ... [the expert] is not permitted merely to parrot another's conclusions"). Accordingly, Pa. R.E. 703 lends no support to Appellant's argument.

Moreover, Appellant's reliance on *Milan v. Department of Transportation,* 153 Pa. Cmwlth. 276, 620 A.2d 721 (1993), is also misplaced. In *Milan,* this Court determined that the trial court did not err in allowing expert testimony based on a police report that was not admitted into evidence. However, the police officer who authored the report testified to the facts contained in the report during trial and, thus, the information was contained in the record. Conversely, Officer Hassel did not testify at trial in this case; hence, *Milan* lends no support to Appellant's assertions, and the trial court properly excluded any reference to the opinions of Officer Hassel found in the police accident report as hearsay.[10]

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Appellant's post-trial motions and request for a new trial.

Accordingly, we affirm.

### ORDER

AND NOW, this 2nd day of December, 2014, the August 7, 2013 order of the Philadelphia County Court of Common Pleas is affirmed.

---

10. Appellant alternatively argues that Posusney and Dr. Thomas should have been able to testify regarding the police accident report because Officer Caserio and Martin made references to it in their testimony. As noted above, Officer Caserio's and Martin's references to the police accident report were not directly from the police accident report and did not mention the opinions of Officer Hassel found in the police accident report.