# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Constance Worley and | : | |
| Leonard Worley, H/W, | : | |
| Appellants | : | No. 2111 C.D. 2016 |
| | : | Argued: October 19, 2017 |
| v. | : | |
| | : | |
| County of Delaware and Michael Gura | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                    HONORABLE ROBERT SIMPSON, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: November 28, 2017**


In this appeal, Constance Worley[1] (Plaintiff) asks whether the Court of Common Pleas of Delaware County[2] (trial court) erred in denying her post-trial motion seeking a new trial after a jury verdict in favor of the County of Delaware (County) and its employee, Michael Gura (Gura) (collectively, Defendants).  A jury found that Gura was not negligent in this suit arising from a motor vehicle accident between Plaintiff and Gura, who was operating a County-owned truck. Plaintiff primarily challenges the trial court's rulings relating to the admission of testimony by Defendants' witnesses.  Discerning no merit in Plaintiff's challenges, we affirm.


## I. Background
## A. Factual and Procedural History

---

[1] When resting their case at the trial, Plaintiffs' counsel withdrew a loss of consortium claim on behalf of Plaintiff Leonard Worley; therefore, he is not a party to this appeal.

[2] Senior Judge Charles B. Burr, II presided.

The trial court set forth the following background to this matter. Through her trial testimony and complaint, Plaintiff asserted that, on June 3, 2013, while she was operating her motor vehicle that was stopped first in line in the middle lane of the intersection of Chester Pike and Ashland Avenue in the Borough of Glenolden, her vehicle was struck on the right passenger side by a vehicle driven by Gura, while in the course of his employment with the County. Plaintiff alleged, among other related physical complaints, that she sustained cervical nerve damage requiring cervical fusion surgery as a result of the impact. Defendants denied Plaintiff's negligence claims and raised common law and statutory defenses in new matter.

Shortly before commencement of trial on June 15, 2016, the trial court denied Plaintiff's motions *in limine* seeking to: exclude the testimony and any reference to debris on the road at the accident site; exclude the testimony of Michael Berkovitz, Defendants' accident reconstruction expert, because it failed to meet the Frye[3] test; and, exclude the testimony of Michael Berkovitz in its entirety. The trial court granted Plaintiff's motion *in limine* seeking an adverse inference instruction resulting from the spoliation of evidence, Defendants' failure to produce the names and contact information of the four passengers who were in Gura's vehicle at the time of the accident.

Further, after the conclusion of trial, the trial court dismissed as moot Plaintiff's motion *in limine* to exclude the Glenolden Police Incident Report, the Delaware County Park Police Incident Report, and the testimony of Officer Joseph

---

[3] See Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

2

Thompson, formerly of the Glenolden Police Department, who investigated this accident. With the exception of the order allowing for an adverse inference instruction to the jury as to Defendants' spoliation of evidence, these rulings are relevant to the issues Plaintiff raises in this appeal.

At trial, Plaintiff testified on her own behalf. She explained that she was stopped on Chester Pike at the intersection of Ashland Avenue while driving to work around 8:00 a.m., in light rain on June 3, 2013. According to Plaintiff, when the light changed to green Gura's vehicle, a large truck that was stopped "hand close" to her right, struck her vehicle while moving to the left to make a wide right turn onto Ashland Avenue. Tr. Ct., Slip Op., 2/21/17, at 3 (citing Notes of Testimony (N.T.), 6/15/16, at 108-09, 112; N.T., 6/16/16, at 22). Plaintiff testified she saw Gura's truck strike her car and the impact caused her body to slam "into the driver's side, left side, whipped to the left, and [her] neck and back were towards the door." Id. (citing N.T., 6/15/16, at 109-10). Plaintiff added that her shoulder hit the door and her knees hit her vehicle's steering console.

Plaintiff indicated that after the impact Gura parked his truck across the street and two of his passengers assisted Plaintiff in removing a metal obstacle from the wheel of her vehicle so she could move her vehicle across the street. Plaintiff testified she sustained damage to her vehicle on "the right side passenger fender. Everything is right side passenger fender, right side light, right side pillars and rockers, right side [and rear] passenger door[s]. …" Id. (citing N.T., 6/15/16, at 112-15). Plaintiff testified that when speaking to police at the scene, she refused an

3

ambulance, and, when Gura approached her to ask if she was alright, he seemed "apologetic." Id. (citing N.T., 6/15/16, at 118-19).

Plaintiff testified she felt "jittery" at the scene because she was never in an accident of that kind before, and she felt pain in her back and neck. Id. (citing N.T., 6/15/16, at 120). She also testified she never injured her neck or received any treatment for her neck before the accident. Plaintiff testified her son drove her in her car to an auto body shop near where the accident occurred, and she was immediately issued a rental car by her insurance company and drove it to her home.

Plaintiff testified she suffered prior back pain as a result of the correction of her gait from a left knee problem that eventually resulted in knee replacement surgery. Plaintiff testified that because of knee, shoulder, headaches and neck pain from the accident, she went to the emergency room between 3:00 and 5:00 p.m. on the day of the accident after her husband returned home from work. Plaintiff indicated that the emergency room staff performed a CAT scan of her head, put her neck in a brace, gave her medication and discharged her with instructions to follow up with her doctor. Plaintiff testified "she was feeling terrible the next day, really stiff and in a lot of pain, hurting everywhere like she was beat up[.]" Id. at 4 (citing N.T., 6/15/16, at 125-26; N.T., 6/16/16, at 13). She followed up with a visit to Delaware County Pain Management where she complained of "wrist pain, neck, back, lower back, shooting pain going down my arms and to my hands, and it was tingling, and my lower, in my legs, it was shooting pain going down there too" that she claimed she experienced for the first time in her life. Id. (citing N.T., 6/15/16, at 125-26; N.T., 6/16/16, at 13). Plaintiff testified she treated at Delaware County

4

Pain Management for six to seven months and was examined and treated by several other physicians during and after that time.

Plaintiff further testified that because none of the treatments, including trigger point injections and epidurals, relieved her pain from the injury to her neck emanating from the date of the injury, she treated with Dr. Andrew Freese, a neurosurgeon, in September 2015. Dr. Freese recommended disc removal surgery, which he performed about a month later. Plaintiff indicated that, while the surgery stopped the shooting pain, numbness and tingling from her neck, she still experienced numbness in her left shoulder for which she received treatment from two other physicians. Plaintiff testified she returned to work two months after the accident and six months after the surgery. Plaintiff testified the injury prevented her from performing numerous daily activities, and some of these activities continue to give her difficulties because she continues to have pain in her lower back and down her legs.

On cross-examination, Plaintiff testified that Gura's truck was much bigger, taller and longer than her vehicle. When asked whether her vehicle moved as a result of the contact with Gura's truck, Plaintiff stated, "[a]ll I know, [is that] it rocked back and forth." Id. at 5 (citing N.T. 6/16/16, at 4-6). However, when shown the transcript of her deposition testimony stating her car did not move, she replied, "[c]orrect." Id. Plaintiff testified she did not call police to the accident scene, and she told the responding officer that she did not want an ambulance and her husband would take her to the hospital later in the afternoon. When asked why, despite experiencing immediate pain from the accident, she did not have her son or the police

5

officer drive her to the hospital, Plaintiff responded that she preferred to wait for her husband to take her when he came home from work. Plaintiff also testified she never received treatment from her personal physician for the injuries alleged in this accident, even though this physician examined her in 2014. The trial court noted that Plaintiff's testimony as to whether she actually told her physician about the accident was evasive and amounted only to "I don't remember" and "I don't recall." Id. at 6 (citing N.T. 6/16/16, at 11-12). Plaintiff also testified she contacted her lawyer two days after the accident.

When asked whether it was the running board or "step down" along the side of Gura's truck that struck her vehicle when Gura made the right turn, Plaintiff replied she was "not sure." Id. (citing N.T. 6/16/16, at 24-25). When shown photographs of her vehicle taken by her husband at the body shop that showed no cracked or broken headlight or visible damage to the passenger side of the vehicle, Plaintiff asserted the photographs were "grainy" and she declined to agree that the photographs depicted merely reflected light rather than dents to the side of her vehicle. Id. (citing N.T. 6/16/16, at 25-30; Exs. P-1, P-1A-C). When shown photographs of Gura's truck, Plaintiff agreed that the step down from the truck's driver side door did not extend beyond the side of the truck. Defendants' counsel used a juxtaposition of paper envelopes to represent the two vehicles and to posit various scenarios regarding the place and effect of the striking of the side of Plaintiff's vehicle by the truck's running board. In response, Plaintiff could not be shaken from her belief that her vehicle was struck by the side rather than the back of the truck, and that her vehicle did not move in any direction, but rather merely rocked in place from the impact.

Plaintiff also submitted the videotape deposition testimony of Dr. Freese, the neurosurgeon who performed cervical disc fusion surgery on Plaintiff's neck in October 2015, as her expert in neurological disorders, neurosurgery, conditions of the spine, and bioengineering. Dr. Freese described the symptoms with which Plaintiff presented on her first visit and the reasons for his conclusion that she suffered "moderate distress," meaning "she's not writhing in pain, but she's clearly uncomfortable." Id. at 7 (citing N.T., 6/16/16 at 56-60; Freese Dep., 6/10/16, Exs. 1, 2).

Dr. Freese opined that, after a review of all of Plaintiff's medical records he received and an MRI scan showing disc herniations and degenerative changes in Plaintiff's neck, "it was clear that [Plaintiff] had not had neck or significant low back symptoms prior to this accident," and Plaintiff should strongly consider surgery in her neck. Id. (citing N.T., 6/16/16, at 62-71; Freese Dep. Exs. 3, 4). Dr. Freese opined that Plaintiff "had an underlying condition of [significant disc] degeneration in her neck and degenerative changes or arthritis in her neck and low back. She was fragile. And this injury was sufficient to push her over the edge." Id. (citing N.T., 6/16/16, at 71, 76-78; Freese Dep. Exs. 1, 2). Dr. Freese opined Plaintiff suffered bodily function impairments of strength and sensation in her upper extremities, and to some degree, lower extremities with disc abnormalities in her lower back. He further opined Plaintiff would require future medical care related to her neck and her lower back.

Plaintiff's son, Leonard Worley, Jr. (Son), also testified. He provided testimony consistent with Plaintiff regarding road, weather conditions and other surrounding circumstances when he arrived to provide her assistance after the accident.

After Son's testimony, Plaintiff rested. The trial court granted Defendants' unopposed motion for nonsuit on behalf of the County as to Plaintiff's claims for negligent supervision and negligent entrustment of the truck to Gura at the time of the accident.

For their part, Defendants presented the testimony of Gura, who explained that, at the time of the accident, he was transporting four individuals to a community service project in his capacity as Coordinating Supervisor for the Delaware County Community Service Program. Gura testified he did not know or remember the names of his passengers because one year after serving their community service obligations, their records are routinely destroyed. Gura testified he did not swing his truck to the left on Chester Pike when making the right turn onto Ashland Avenue at the time of the accident, and he did not tell Plaintiff when speaking with her afterward that the accident was his fault.

On cross-examination, Gura testified the vehicle he was driving at the time of the accident was a Ford F-650 truck, which was approximately 28-feet long and 8-feet wide, a "very large" box truck. Tr. Ct., Slip Op., at 12 (citing N.T., 6/16/16, at 142). Gura agreed that the running board/step onto the truck is about two feet off the ground, and he never received training or a driving test for driving this

8

specific truck. Gura testified consistently with Plaintiff that it was raining on the day of the accident, but he did not see her vehicle positioned to the left, front, or in the mirrors of the truck as he passed her to her right. Gura was completely unaware of Plaintiff's vehicle's presence until he heard a noise from the impact when he was turning right onto Ashland Avenue from Chester Pike on a green traffic signal.

When shown Plaintiff's proffered pictures of the truck, Gura testified they showed no damage as a result of the impact with Plaintiff's vehicle. Gura further testified he did not observe Plaintiff's vehicle in the mirrors on his truck, and he did not agree he struck Plaintiff's vehicle as she was stopped.

On re-direct examination, Gura testified he would characterize the accident impact as "just a thump" he felt when he pulled up to the intersection and made his right turn. Id. at 13 (citing N.T., 6/16/16, at 161). Gura indicated the step down on the side of the truck showed no damage from the impact, and it did not extend beyond the side of the truck as shown in the photograph marked as Exhibit D-1.

Prior to the testimony of Defendants' next witness, Officer Joseph Thompson, formerly of the Glenolden Police Department, Plaintiff's counsel requested a sidebar in which the following discussion ensued:

> [Plaintiff's counsel]: I want to place on the record my objections to the police officer that I made during my motion *in limine*. And also specifically object to any opinion testimony as to who caused the accident, any questions eliciting any testimony regarding the number [of] the vehicles as that indicates the one who would have caused the accident, any questions that would lead to any answers to any testimony relating [it] to be a minor impact

9

> because that's all opinion testimony and beyond what the police officer may -
>
> THE COURT: What did you agree to limit his testimony … I think back in the robing room yesterday in the motion.
>
> [Defendants' Counsel]: I cannot qualify him as an accident investigation officer and I have no intention of asking him for his opinion.
>
> [Plaintiff's counsel]: No, I understand. I want to place on the record. I just also, you know, I think it would be appropriate for an instruction out of [sic] the jury that he's not, you know, making reference to an opinion or minor -
>
> THE COURT: He just said that.

Tr. Ct., Slip Op., at 13-14 (citing N.T., 6/16/16, at 164). This exchange concluded with an agreement that Plaintiff's counsel would raise an objection if Officer Thompson's testimony included an expression of opinion as to the circumstances surrounding the accident.

After Officer Thompson testified that his memory of the accident went no further than what he related in his report, Defendants' counsel provided him with the report, without objection from Plaintiff's counsel, to refresh his recollection. Defendants' counsel laid a foundation to ensure Officer Thompson prepared the report in the normal course of an accident investigation, after which Officer Thompson testified he could explain the report, but he did not have an independent recollection of the accident. Plaintiff's counsel objected to the admission of Officer Thompson's testimony on ground that his memory of the accident was not refreshed. After argument, which established Defendants were not offering the report into evidence, and that the report was a contemporaneously made record of the accident,

10

the trial court allowed the testimony. Officer Thompson testified he remembered the parties upon seeing them in the courtroom, but he could not remember the accident itself other than what he documented in his report. Officer Thompson further testified he observed debris in the right lane where Gura's truck traveled nearest to the curb at the intersection of Ashland Avenue and Chester Pike.

On cross-examination, Officer Thompson testified he did not witness the accident and he did not recall the weather on the date of the accident. Further, a drawing of a diagram of the debris on his report was not essential for an accident of this type. On further questioning by Plaintiff's counsel, Officer Thompson indicated he did not describe the debris or its size, color, state or its exact location in his report, nor did he take any measurements to show how far away the debris was from the curb, the traffic lines, or any of the vehicles involved in the accident. Officer Thompson had no knowledge as to which vehicle the debris may have come from, whether there was any other debris on the road or if the debris was vehicle debris or any other type.

Defendants next presented the videotape deposition testimony of their medical expert, Dr. Karl Rosenfeld, an orthopedic surgeon, without objection. The trial court noted Plaintiff's counsel offered no objection that Dr. Rosenfeld was not a neurosurgeon or that he never performed cervical fusion surgery. Dr. Rosenfeld testified that, in preparation for his testimony, he reviewed many of Plaintiff's medical records and Plaintiff's deposition. He also obtained a history and performed a physical examination.

11

Dr. Rosenfeld initially indicated that Plaintiff reported that the accident occurred when the rear of the truck struck her vehicle when it made a right turn, but she later indicated the truck brushed her vehicle as it drove by. Dr. Rosenfeld testified he examined Plaintiff three months after her neck surgery, and his impressions were affected by his lack of knowledge as to whether her limited neck motion was a result of the accident or the surgery. Dr. Rosenfeld testified that, because Plaintiff did not express any problems with her low back, he did not examine it. He further opined, upon review of MRI studies of Plaintiff's lumbar spine taken eight days after the accident, he observed some thoracic disc protrusions, as well as protrusion of the discs at C5-C6 with some degenerative changes and a right lateral disc herniation at C6-C7 at the right neural foramen.

Dr. Rosenfeld opined Plaintiff was "overly treated [for] the accident." Id. at 17 (citing Rosenfeld Dep. at 26). He testified he wrote the following in his report in that regard:

> The accident as described does not sound like a significant one. Her car was struck on the side. She did not have any significant damage to the car, as I understand it. She may have had some neck pain, and I wrote sprain along with other problems from the accident, but here's the gist …. For her to go on and have a cervical fusion, a rather significant mode of treatment, I find difficult to understand. And then I wrote: 'in these kinds of cases I'm asked to state my opinion with reasonable medical certainty.' And I wrote: '[a]lthough anything is possible, including the possibility [that] the neck fusion was necessary as a result of the accident, with reasonable medical certainty, based on the mechanism of injury, I have a problem with this, and therefore, do not believe the accident in and of itself caused a problem that [Plaintiff] had, including the cervical fusion.'

12

Id. at 17 (quoting Rosenfeld Dep. at 27-28).

Dr. Rosenfeld was then presented with a copy of the report of Michael Berkovitz, Defendants' accident reconstruction expert, and was asked to comment on the written addendum to Dr. Rosenfeld's report, which was appended as an exhibit to his deposition. He responded:

> Berkovitz went over the accident in question in great detail. The last page of his report, he states, I'm quoting him, 'The forces from the minor impact to the sheet metal of [Plaintiff's] vehicle would not have transmitted to the driver's position of [Plaintiff].' What he's saying in layman's terms is he doesn't see enough impact to get from where she got hit to go up to her neck, simply stated. And then I wrote: 'I reviewed my letter to you, and expressed as I just did in my concluding paragraph of my report, that I also had trouble, not as a mechanical genius, but as a doctor, to understand how she could go on and have all of these problems.' And therefore, I wrote that his letter - in fact, I'll read: 'Therefore, as I ended my report on page 7, noting that a problem with the accident caused her neck problems, I now have less of a problem and am fortified by this report that the accident in question was not the reason for her neck pain or the subsequent treatment she was receiving and is receiving.'

Id. (quoting Rosenfeld Dep. at 31).

On cross-examination, Dr. Rosenfeld agreed that in all the records in Defendants' counsel's possession and provided to him, there was no mention of any neck problem or pain or any treatment for Plaintiff's neck pain prior to the accident. Dr. Rosenfeld stated he missed a reference to Plaintiff's neck pain being "severe" as reported during her visit to the emergency room on the date of the accident, suggesting it may have appeared on a page that was missing from that report. When

13

shown a six-page copy of Plaintiff's hospital record, Dr. Rosenfeld acknowledged that the language "neck pain, severe, muscular in nature?" appeared on page two. Id. at 18 (citing Rosenfeld Dep. at 18). Dr. Rosenfeld emphasized Plaintiff was forthright about her complaints, and he concluded she was experiencing pain, but the surgery on her neck was not related to the accident.

On re-direct examination, Dr. Rosenfeld opined that EMG tests, which reflect highly subjective reports of pain, can have different interpretations when conducted by different examiners. Dr. Rosenfeld again opined the records showed that Plaintiff's shoulder and left arm weakness were secondary to the surgery and not a result of the accident and he based this opinion on what Plaintiff reported to him.

Defendants next presented the testimony of their accident reconstruction expert, Michael Berkovitz. At sidebar, Plaintiff's counsel argued:

> I'm placing my objection on the record as to the report and opinions of [Berkovitz]. He is not a medical doctor and provides opinion on the body based upon forces and how – on what kind of injury she would have sustained based on those forces and also pursuant to [Pennsylvania Rule of Evidence] 705, an expert must provide calculations for his data and his opinion is devoid of any calculations and I'm just renewing my objections and plac[ing] them on the record based on my motions *in limine* that I filed and my objections to qualifications and to his actual testimony today.

Id. at 19 (citing N.T., 6/16/16, at 180). Defendants' counsel responded, "this is an issue dealt with in the motion *in limine*, but in addition[,] he's not going to give a medical opinion. He's going to testify as a biomechanical engineer as an accident

14

reconstruction expert." Id. Noting Plaintiff's counsel's objection and that Plaintiff did not submit her motions *in limine* for the trial record, the trial court permitted Berkovitz to testify.

During *voir dire*, Berkovitz related that his expertise includes determining "occupant kinematics," a term for how people move around inside a vehicle based on forces from the outside, using photographs, site views and testimony from the individuals. Id. (citing N.T., 6/16/16, at 184-86). Plaintiff's counsel questioned Berkovitz as to any education he may have had in medicine and biomedical engineering, and when the witness answered in the negative, Plaintiff's counsel renewed his objection to the presentation of Berkovitz's testimony. The trial court again overruled the objection. Berkovitz indicated his opinions would be founded on review of reports of the accident, including that of Officer Thompson, with its notation of debris in the right lane at the scene, photographs of the scene, a trip to the accident scene, photographs of Plaintiff's vehicle and Defendants' truck and his inspection of the vehicles. He also relied on the specifications for Plaintiff's vehicle, the parties' depositions, Plaintiff's medical records, records of Plaintiff's vehicle and some legal correspondence.

Berkovitz testified debris found at the location of a low speed collision is "dirt that's under the fenders or the [dirt] that's in the undercarriage of the vehicle [that] will drop down onto the roadway," meaning in this instance, the two vehicles came together in the right lane of travel. Id. at 20 (quoting N.T., 6/16/16 at 189-90). Berkovitz opined, within a reasonable degree of engineering certainty, that at least part of Plaintiff's vehicle was in the right lane at the time of impact. When

15

asked to state within a reasonable degree of engineering certainty whether the impact would have caused injury to Plaintiff, Berkovitz replied "the Delta-v or the change in velocity due to the impact or collision would have been so low [that] the forces should not have come across into her passenger seating area." Id. (quoting N.T., 6/16/16, at 190-91).

On cross-examination, Berkovitz stated he never saw a diagram showing the appearance of the debris or its exact location on the road or its relation to either vehicle. Berkovitz admitted he did not know the origin of the debris or its distance from the curb or traffic lines, nor its quantity, color, or state because "no radiators or oil or parts of the vehicle that would produce liquid were involved in this accident." Id. (quoting N.T., 6/16/16, at 193-94). Berkovitz acknowledged it rained on the date of the accident, but that information did not factor into the formulation of his conclusions. Berkovitz testified he only knew that debris was observed in the right lane and nowhere else on the road. Berkovitz indicated he had no information that would show where Gura's truck was situated in the right lane when the impact occurred. Additionally, he did not know if there was running water on the road from the rain or whether it would have moved the debris to or from any other location or affected it in any way. Although debris was observed in the right lane, Berkovitz replied he did not know whether Gura's passengers, who manipulated the metal away from Plaintiff's passenger side wheel so she could move her vehicle, could have pulled the debris off her car in that place.

Further, citing page 1730 of the Northwestern Traffic Investigation Manual issued by the institution where Berkovitz received his training, Plaintiff's

16

counsel asked Berkovitz whether he would agree that "if the vehicle's body is moving when underbody debris is dislodged, the debris is also moving and so does not drop straight to the ground"; Berkovitz answered affirmatively. Id. at 21 (quoting N.T., 6/16/16, at 198-200). Berkovitz stated he included no calculations in his report because there "were no calculations to be made in this collision" as there were "no physical facts that were documented to say how it happened" and "no forces involved in a sideswipe type collision" where there was no oppositional Delta-v force that would reduce the speed of the vehicle doing the striking. Id. at 21-22 (quoting N.T., 6/16/16, at 200-01). Berkovitz also acknowledged he did not know the weight of Defendant's truck, and he used a 2013 Hyundai Sonata four-door sedan instead of the Plaintiff's 2000 Hyundai Sonata in formulating his opinion. Berkovitz opined that the outer shell of Plaintiff's right front fender was the only point on Plaintiff's vehicle that was struck in the accident.

Ultimately, after 30 minutes of deliberation, the jury returned a unanimous verdict that Defendants were not negligent with regard to the accident. The jury did not reach the questions of causation and damages. Plaintiff filed post-trial motions, which the trial court denied. Plaintiff then appealed to this Court.

**B. Trial Court's Opinion**

The trial court subsequently directed Plaintiff to file a concise statement of the errors complained of on appeal, which she did. The trial court then issued an opinion pursuant to Pa. R.A.P. 1925(a). In its opinion, the trial court noted, although Plaintiff set forth numerous issues in her Pa. R.A.P. 1925(b) Statement, she mainly challenged the trial court's admission of the testimony of Officer Thompson, Berkovitz and Dr. Rosenfeld.

17

As to Officer Thompson, the trial court explained, Plaintiff asserted the trial court erred in: (1) allowing Officer Thompson to testify as to his opinion regarding the accident, which he did not witness and about which he had no independent recollection, inasmuch as his memory was not refreshed by a reading of his police report; (2) failing to instruct the jury as to Officer Thompson not being allowed to give his opinions concerning the accident; (3) allowing Officer Thompson to testify the accident was "insignificant" in nature and instructing the jury to disregard that statement only after this testimony was heard; (4) allowing Officer Thompson to testify, even though he was never qualified as an expert, without any expertise in accident reconstruction or investigation; and, (5) allowing Officer Thompson to provide speculative testimony that there was debris present at the point of impact at the accident scene when he was unable to specifically state what it was or where it came from.

The trial court pointed out that Plaintiff's counsel cited Section 3751(b)(4) of the Vehicle Code, 75 Pa. C.S. §3751(b)(4), which prohibits admission of a police report in an action for damages arising out of a motor vehicle accident, and Rox Coal Co. v. Workers' Compensation Appeal Board (Snizaski), 807 A.2d 906, 914 (Pa. 2002), for the proposition that "a police report prepared by an officer who is not a witness to the accident is inadmissible hearsay evidence and should not be admitted into evidence."

Plaintiff also cited Brodie v. Philadelphia Transportation Co., 203 A.2d 657, 658 (Pa. 1964), for the Supreme Court's holding that the testimony of non-eyewitness police officers as to the cause of accidents is "grossly speculative and an

18

invasion of the jury's exclusive prerogative." Plaintiff also faulted the trial court's curative instruction provided at Plaintiff's counsel's request to disregard Officer Thompson's spontaneous remark that this was an insignificant accident for not having the "desired effect" under Kelly v. Buckley, 421 A.2d 759, 762 (Pa. Super. 1980) (despite curative instructions, inadmissible evidence may influence a jury's decision). Finally, Plaintiff challenged the admissibility of Officer Thompson's testimony as to the presence of debris on the roadway as allowing him to impermissibly speculate as to the cause of the accident.

Responding to these assertions, the trial court explained that its review of Officer Thompson's testimony revealed that: (1) his police report was neither offered nor admitted into the evidence; (2) he proffered no opinion as to the cause of the accident; (3) Defendants never offered him as an expert witness and he did not offer expert testimony; and, (4) the trial court issued a curative instruction when requested.

Further, Officer Thompson testified only as to what he observed at the scene in accordance with its memorialization in his report. The trial court stated such testimony was admissible as an exception to the hearsay rule under Pennsylvania Rule of Evidence 803.1(3) ("Recorded Recollection of Declarant Witness").

Here, the trial court explained, Plaintiff "continuously waged a tortured attempt to twist Officer Thompson's every statement into a proof of claim that he was stating an 'opinion' about or regarding the accident and its cause, including

19

testimony that he was merely interpreting the meaning of his own statements written in his report." Tr. Ct., Slip Op., at 27 (citing Hr'g on Post-Trial Motions, N.T., 11/4/16, at 4-16). Moreover, Plaintiff's counsel ignored his pre-existing agreement with Defendants' counsel that he would move to strike any testimony he found objectionable. Id. (citing N.T., 6/16/17, at 164-65). The trial court noted Plaintiff's counsel moved to strike, and the trial court instructed the jury that it struck, Officer Thompson's unsolicited and blurted out comment that he could not personally remember the accident because it would have been an insignificant accident and arguably unreportable. Id. (citing N.T., 6/16/16, at 171-72).

Further, Plaintiff conducted an extensive cross-examination of Officer Thompson that included numerous questions about the "debris" in the roadway, thus eliciting the same testimony that Plaintiff now claimed was objectionable and an inadmissible expression of opinion. Id. (N.T., 6/16/16, at 173-78). The trial court stated it is axiomatic that, in general, a party may not object to improper testimony she herself elicits. Oko v. Krzyzanowski, 27 A.2d 414, 419 (Pa. Super. 1942). For these reasons, the trial court stated Plaintiff's objections to Officer Thompson's testimony lacked merit.

Next, as to Berkovitz, Defendants' accident reconstruction expert, Plaintiff asserted entitlement to a new trial on the grounds that the trial court: (1) improperly disallowed a Frye hearing on Berkovitz's proposed testimony; (2) did not limit his testimony at the time of trial; (3) improperly allowed Berkovitz to testify when he was not qualified to testify about forces and did not provide calculations to support his findings in violation of Pennsylvania Rule of Evidence 705; and, (4)

20

Berkovitz based his opinion on the contents of Officer Thompson's inadmissible police report. The trial court stated that Plaintiff asserted Berkovitz improperly based his opinion that minimal forces were involved in this collision that should not have resulted in the injury Plaintiff complained of solely on speculative evidence and mere conjecture. Plaintiff contended Berkovitz's testimony should have been limited because he failed to disclose the calculations and methodologies from which his opinion derived.

The trial court determined it was patently clear that a majority of Plaintiff's contentions regarding Berkovitz's testimony went to the weight of that testimony, and not its admissibility. The trial court also rejected Plaintiff's objections to Berkovitz's use of the police report in formulating his opinion.

In addition, the trial court explained, Plaintiff's claimed denial of a <u>Frye</u> hearing, so as to ascertain whether the methods Berkovitz employed in formulating his opinion were generally accepted in the accident reconstruction field, was never made, and, therefore, was waived. To that end, the trial court stated Plaintiff's motion *in limine* to exclude Berkovitz's testimony because it failed to meet the <u>Frye</u> test was filed shortly before trial. The motion contained no request for a <u>Frye</u> hearing; rather, Plaintiff merely requested a ruling that the trial court agree with Plaintiff's conclusion that Berkovitz's findings were unreliable for failure to follow "from a scientific methodology which requires a hypothesis supported and tested by available facts or data and which has been selectively chosen because they fit with the theory." <u>Trach v. Fellin</u>, 817 A.2d 1102, 1113 (Pa. Super. 2003); Tr. Ct., Slip Op., at 29. The trial court noted that the *ad damnum* clause at the conclusion of Plaintiff's memorandum of law in support of her motion stated, "[b]ased upon the

foregoing … Plaintiffs respectfully request that this Court enter an order precluding [Berkovitz] from offering any testimony on the forces and causes of the crash." Tr. Ct., Slip Op., at 29-30.

The trial court explained that the record revealed Berkovitz was eminently qualified as an expert to provide testimony in the field of accident reconstruction, and he reviewed a wide array of records and information reasonably relied on by professionals in the field to assist him in formulating his opinion that the forces involved in the impact were insufficient to cause Plaintiff's alleged injuries. The trial court stated this was a sufficient basis for the trial court to rule that Berkovitz possessed the requisite degree of specialized knowledge in the field of accident reconstruction. Cf. In re Glasser Bros., Inc., 555 A.2d 129 (Pa. Super. 1989). The trial court determined Berkovitz had a sufficient basis to conclude that the impact here occurred in the right lane occupied by Gura, a conclusion the jury was free to accept or reject.

For these reasons, the trial court determined Plaintiff did not meet her burden of showing Berkovitz's testimony was improperly admitted.

As to the testimony of Dr. Rosenfeld, Plaintiff asserted entitlement to a new trial on the grounds that the trial court improperly admitted or failed to limit his testimony where he never performed a cervical fusion surgery and was unqualified to testify on Defendants' behalf as to the injury suffered here. Plaintiff also argued Dr. Rosenfeld should not have been allowed to file a supplemental report to show his agreement with Berkovitz's purportedly inadmissible opinion that the forces

involved in the collision here were not strong enough to cause an injury that would require cervical fusion surgery.

First, the trial court responded, when Defendants presented Dr. Rosenfeld's videotape deposition at trial, Plaintiff did not object to its admission, nor did Plaintiff raise an issue at the close of trial when acquiescing to the trial court's final instructions or to the verdict after the jury was polled. The trial court stated Plaintiff should have raised her objection before or after the jury's verdict was delivered but not yet certified, but Plaintiff did not do so; therefore, any such objection was waived. Dilliplaine v. Lehigh Valley Trust Co., 322 A.2d 114 (Pa. 1974).

Further, the trial court explained, a review of the printed copy of Dr. Rosenfeld's deposition, admitted into evidence, showed numerous markings the trial court made in order to limit Dr. Rosenfeld's testimony in response to Plaintiff's objections, so these contentions must be deemed waived or lacking a factual foundation.

The trial court also stated, a review of the objections submitted in Plaintiff's post-trial motions, her supporting memorandum, and at the hearing on post-trial motions, revealed the objections were barebones and unsupported by citation to relevant authority and must also be deemed waived for that reason. The trial court further pointed out, although Dr. Rosenfeld was well-qualified to present his opinion as to the alleged injuries, the jury did not reach the issue of damages, so this testimony could not have prejudiced Plaintiff.

As a final issue, Plaintiff argued a new trial was warranted as no evidence was presented to refute her testimony that she was stopped at the time of the accident or to prove she was at fault. To be sure, the trial court stated, the jury found no one at fault or negligent in this accident. The trial court explained its exhaustive review of all of the evidence submitted by both parties revealed Plaintiff never met her burden of showing by a preponderance of the evidence that she was entitled to a decision in her favor.

To that end, Plaintiff was never able to definitively describe how the accident occurred, and Gura vehemently refuted her claim that he swung the truck to the left to make his right turn. Gura testified that, while approaching the intersection he felt, and did not hear, a thump to the side of the truck. The trial court indicated Plaintiff's assertion of sitting in the center lane at the intersection of Chester Pike and Ashland Avenue was further contradicted by admissible evidence from Officer Thompson and Berkovitz as to the presence of debris in the right lane, which allowed for the circumstantially permissible inference that Plaintiff's vehicle entered the right lane and struck the truck. The trial court stated it could not usurp the jury's role in evaluating credibility determinations that may have been weighed against Plaintiff nor would it attempt to do so with regard to the question as to whether anyone involved in the accident was at fault. Moreover, the law is longstanding that the mere occurrence of an accident raises no presumption that negligence was involved. Mitchell v. Scharf, 115 A.2d 774 (Pa. Super. 1955).

This matter is now before us for disposition.

## II. Issues

On appeal, Plaintiff raises the following issues:

1. Whether it is reversible error that the [trial court] allowed Officer Thompson to testify when he had no independent recollection of this matter and his memory was not refreshed by looking at his police report resulting in the following additional errors:

> A) allowing the Officer to testify without instruction, thus allowing the [O]fficer to interject his [o]pinions of the severity of the accident; and

> B) allowing the Officer to testify to debris when the [O]fficer had no recollection and no information as to the debris; and

> C) allowing the [p]olice report to come into evidence in an indirect manner?

2. Whether it was reversible error that the [trial court] allowed Michael Berkovitz to testify and/or failed to limit his testimony resulting in the following additional errors[:]

> A) allowing him to testify when he was not properly qualified to testify in this matter;

> B) allowing him to testify as to a medical opinion when he was not qualified to nor proffered as a medical expert;

> C) allowing him to testify when his opinions did not meet the requisite standard to allow him to testify;

> D) allowing him to testify when his testimony was based upon inadmissible evidence, [*i.e.*,] the [p]olice report; and

> E) allowing him to testify when he failed to provide the required proof of an expert as to his conclusions?

25

3. Whether it is reversible error that the [trial court] allowed Dr. Karl Rosenfeld to testify at the time of trial when he was not qualified to testify as to the necessity of [c]ervical [f]usion [s]urgery since the Doctor had never performed such surgery in his entire career, and should not have been allowed to testify as to his supplemental report as it was based upon inadmissible evidence.

4. Whether [the trial court] erred in denying [Plaintiff's] Post-Trial Motion for a New Trial when the verdict was against the weight of the evidence?

Appellants' Br. at 5-6.

### III. Discussion

At the outset, we note, in responding to a request for a new trial, a trial court must follow a two-step process. Daddona v. Thind, 891 A.2d 786 (Pa. Cmwlth. 2006). First, it must decide whether one or more mistakes occurred at trial. Id. Second, if the court concludes a mistake occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. Id. The harmless error doctrine underlies every decision to grant or deny a new trial. Id. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would rule differently; the moving party must show prejudice resulting from the mistake. Id.

As an appellate court, to review the two-step process of the trial court for granting a new trial, we also employ a two-prong analysis. Id. First, we examine the decision of the trial court that a mistake occurred. In so doing, we must apply the appropriate standard of review. Id. If the alleged mistake involved an error of law, we must scrutinize for legal error. Id. If, on the other hand, the alleged mistake

26

involved a discretionary act, we must review for an abuse of discretion. Id. If there were no mistakes at trial, we must affirm a decision by the trial court to deny a new trial as the appellate court cannot order a new trial where no error of law or abuse of discretion occurred. Id.

Further, in reviewing Plaintiff's evidentiary issues, we apply the following standard:

> The admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court. Thus[,] our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

Crespo v. Hughes, 167 A.3d 168, 181 (Pa. Super. 2017) (citations omitted).

## A. Officer Thompson
### 1. Contentions

Plaintiff first contends the trial court erred in allowing Officer Thompson to testify when he had no independent recollection of the accident and his report did not refresh his memory, all over Plaintiff's objections and the denials of Plaintiff's motions *in limine*. Plaintiff asserts Officer Thompson was allowed to testify, without instruction, and thus gave his opinions of the accident, its cause and severity, thereby tainting the jury and prejudicing Plaintiff. Plaintiff maintains Officer Thompson's entire testimony was inadmissible hearsay. She contends Officer Thompson admitted his report did not refresh his recollection and it was his *interpretation* of the accident. Also, Plaintiff argues it was error to allow Officer

27

Thompson to testify as to debris at the scene, which allowed him to interject his opinion as to the point of impact, without witnessing the accident or having any information as to what the debris was, whose debris it was, where it was located at the scene, or any independent recollection of the debris.

Plaintiff contends that, allowing Officer Thompson to continue to testify, over her objections, was improper as it allowed hearsay to be stated to the jury and allowed Officer Thompson's police report to be entered into evidence indirectly, as testimony. Plaintiff notes that the trial court, in its opinion and during testimony, opined that Officer Thompson's testimony was proper under Pennsylvania Rule of Evidence 803.1(3) as he testified only regarding what he observed at the scene in accordance with its memorialization in his report. Plaintiff asserts this is incorrect as Officer Thompson testified that it was his *interpretation* of the accident; he did not testify it was what he observed.

Further, Plaintiff asserts, although the trial court stated the rule in Pennsylvania Rule of Evidence 803.1(3), the explanatory comments make clear that, to qualify a recorded recollection as an exception to the rule against hearsay, the witness must testify the record correctly reflects knowledge the witness once had. In other words, the witness must vouch for the record's reliability. Here, Plaintiff contends, Officer Thompson never did so. See N.T., 6/16/16, at 167. Plaintiff argues Officer Thompson cannot vouch for the reliability of the record as it was his interpretation of the accident, not his actual observation. The report contained no diagrams and no markings to refresh his memory and he admitted as such.

28

Plaintiff maintains the general rule in Pennsylvania is that an investigating officer who did not witness a motor vehicle accident is not competent to render an opinion at trial as to its cause. See, e.g., Brodie. Plaintiff argues the Superior Court examined a very similar situation as to statements made by a police officer in Davis v. White, 156 A.3d 1261 (Pa. Super. 2017). There, she contends the Superior Court made clear that when an officer has no independent recollection of an accident, and a report does not refresh an officer's memory, the testimony and statements do not present competent evidence, are speculative, and are not admissible. By allowing Defendants' counsel to continually question Officer Thompson, Plaintiff argues, the trial court allowed Defendants to have Officer Thompson's inadmissible report entered into evidence indirectly resulting in prejudice.

Plaintiff also contends Section 3751(b)(4) of the Vehicle Code specifically states that a police report shall not be admissible as evidence in any action for damages arising out of a motor vehicle accident. And, a police report prepared by an officer who is not a witness to the accident is inadmissible hearsay and should not be admitted into evidence. Rox Coal. Nor should a party be able to submit such a report into evidence indirectly. Id.

Plaintiff maintains the trial court erred in allowing Officer Thompson to testify without instruction thereby allowing him to interject his opinions as to the severity of the accident to the jury. Based on Officer Thompson's deposition testimony, Plaintiff argues, her counsel was aware Officer Thompson was going to interject his opinion as to the severity of the accident. In his deposition, Officer

Thompson testified he had no independent recollection of the accident and his report did not refresh his memory. Plaintiff asserts she requested a specific instruction be given to Officer Thompson so he did not prejudice Plaintiff by stating his opinion as to the severity of the impact. Despite this request, no such instruction was given, and Officer Thompson was allowed to testify.

Further, Plaintiff maintains Defendants' counsel elicited opinion testimony from Officer Thompson including testimony that the accident was "insignificant." N.T., 6/16/16, at 163-65. Plaintiff notes that, after Officer Thompson was allowed to testify as to the insignificant nature of the accident, the trial court instructed the jury that this testimony was stricken; however, the harm already occurred and the jury was permitted to hear this highly prejudicial opinion testimony. Plaintiff contends the exact situation occurred in Kelly, and the Superior Court held that, despite a curative instruction, the jury was influenced by the inadmissible evidence. Plaintiff asserts Officer Thompson was never qualified as an expert nor did he have any expertise in accident reconstruction. Plaintiff argues new trials were granted in numerous cases where an officer was allowed to testify as to his opinion of an accident. See, e.g., Brodie.

Plaintiff further maintains the trial court erred in allowing Officer Thompson to testify as to debris on the road when he had no recollection and no information regarding the nature of the debris. Plaintiff contends Defendants' counsel's purpose in eliciting testimony from Officer Thompson as to the debris was tantamount to the officer providing his opinion as to where the impact occurred. Plaintiff argues that Pennsylvania courts deem this type of testimony inadmissible

30

where the officer did not witness the accident. In fact, she asserts a similar situation arose in <u>Anderson v. Russell</u>, 33 Pa. D. & C.3d 308 (C.P. Cumberland 1983), and the common pleas court granted a new trial. Plaintiff also argues that, when the trial court allowed this testimony to be admitted, Plaintiff had no choice but to cross-examine Officer Thompson about the debris, and the trial court improperly determined Plaintiff waived this issue by cross-examining Officer Thompson.

**2. Analysis**

No error is apparent in the trial court's admission of Officer Thompson's testimony. More particularly, our review of the record supports the trial court's determinations that: (1) Officer Thompson's police report of the accident was neither offered nor admitted into evidence; (2) Officer Thompson proffered no opinion as to the cause of the accident; (3) Defendants did not tender Officer Thompson as an expert witness and he did not offer any expert testimony; and, (4) when Plaintiff requested a curative instruction in response to Officer Thompson's unsolicited and blurted out statement that the accident was insignificant, the trial court struck that statement. N.T., 6/16/16, at 165-78.

Further, our review of the trial transcript confirms the trial court's statement that Officer Thompson "testified only as to what he observed at the scene in accord with its memorialization in his report and nothing more." Tr. Ct., Slip Op., at 26. Most importantly, this included Officer Thompson's testimony, as documented in his report, that he observed debris in the right lane at the accident scene, which was the lane occupied by Gura's truck at the time of the accident. N.T.,

31

6/16/16, at 172. Plaintiff objected that Officer Thompson's testimony concerning information set forth in his report constituted hearsay.

Hearsay, defined as a declarant's out-of-court statement or assertion offered into evidence to prove the truth of the matter asserted, is generally inadmissible unless an exception applies. See Pa. R.E. 801(a)-(c), 802. Here, the trial court determined Officer Thompson's testimony concerning the memorialization of his observations at the accident scene was admissible as a recorded recollection under Pennsylvania Rule of Evidence 803.1(3). That Rule states:

> The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:
>
> * * * *
>
> **(3) Recorded Recollection of Declarant-Witness.** A memorandum or record made or adopted by a declarant-witness that:
>
> (A) is on a matter the declarant-witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> (B) was made or adopted by the declarant-witness when the matter was fresh in his or her memory; and
>
> (C) the declarant-witness testifies accurately reflects his or her knowledge at the time when made.
>
> If admitted, the memorandum or record may be read into evidence and received as an exhibit, but may be shown to the jury only in exceptional circumstances or when offered by an adverse party.

Id. (emphasis added).

Here, our review of Officer Thompson's testimony regarding his report reveals that it satisfies each of the above criteria to qualify as a recorded recollection. N.T., 6/16/16, at 167, 171-72. Specifically, Officer Thompson testified: (1) his report related to the accident, which he responded to, but could not presently recall, id. at 167; (2) he prepared his report when investigating the accident, id. at 171; and, (3) what he documented in his report accurately depicted what he observed at the accident scene. Id. at 172.

Nevertheless, at oral argument before this Court, Plaintiff asserted that Section 3751(b)(4) of the Vehicle Code should control over Pennsylvania Rule of Evidence 803.1(3) because Section 3751(b)(4) is a more specific provision than the general evidentiary rule set forth in Rule 803.1(3). We disagree. Section 3751(b)(4) of the Vehicle Code states: "The copy of the [police accident] report shall not be admissible as evidence in any action for damages or criminal proceedings arising out of a motor vehicle accident." 75 Pa. C.S. §3751(b)(4). Here, a copy of Officer Thompson's police report was neither offered nor admitted at trial. Further, Officer Thompson, who testified and was subject to cross examination, testified *only* as to his firsthand recorded recollection regarding debris on the roadway and its location as he memorialized those observations in his report. Officer Thompson offered no opinion testimony regarding the cause of the accident nor did he opine that the existence of debris in the right lane on the roadway corresponded with the point of impact.

To that end, at trial, Defendants presented the testimony of Berkovitz, their accident reconstruction expert, regarding the cause of the accident. As explained more fully below, in rendering his opinion on causation, Berkovitz relied on, among other things, Officer Thompson's police accident report, including its notation regarding the existence of debris and its location on the roadway. N.T., 6/16/16, at 230. "An expert is permitted to reasonably rely on a police accident report in reconstructing the accident pursuant to Pa.R.E. 703 …." Harris v. Phila. Facilities Mgmt. Corp., 106 A.3d 183, 191 (Pa. Cmwlth. 2014). Thus, Berkovitz could properly consider the facts in Officer Thompson's police accident report in rendering his opinion. Id. As a result, even if the trial court erred in admitting Officer Thompson's testimony concerning his recorded observation of debris and its location on the roadway, Berkovitz was permitted to rely on the facts set forth in the police accident report in rendering his opinion. Id. Thus, any alleged error concerning the admission of Officer Thompson's testimony as to debris was harmless and would not warrant a new trial. As stated above, the harmless error doctrine underlies every decision to grant or deny a new trial. Daddona.

> Further, as the trial court explained:
>
> Plaintiff … has continuously waged a tortured attempt to twist [Officer] Thompson's every statement into a proof of claim that he was stating an 'opinion' about or regarding the accident and its cause, including testimony that he was merely interpreting the meaning of his own statements written in his report. (Post-Trial Motion Hearing 11/4/16 N.T. 4-16). Moreover, Plaintiff's counsel ignores his pre-existing agreement with opposing counsel that he would move to strike any of that testimony he found objectionable. (6/16/17 N.T. 164-165).

> Plaintiff's counsel did so move, and the [trial] [c]ourt instructed the jury that [it] had stricken [Officer] Thompson's unsolicited and blurted out comment that he could not personally remember the accident scene because it would have been an insignificant accident and arguably unreportable. (Id., 171-172). However, [Plaintiff] thereafter proceeded to conduct an extensive cross-examination of [Officer] Thompson that included numerous questions about the 'debris' in the roadway, thus eliciting the selfsame testimony that is now claimed to have been deemed objectionable and an inadmissible expression of opinion. (Id., 173-178). …

Tr. Ct., Slip Op., at 27.

Moreover, the cases cited by Plaintiff[4] are inapposite here. In those cases the officers provided opinion testimony as to causation (and in one case the claimed point of impact of the accident) despite the fact that they did not witness the accidents, or they provided testimony as to the issuance of traffic citations in connection with the accidents. Here, Officer Thompson provided no such testimony. N.T., 6/16/16, at 165-78.

In addition, unlike in Kelly, where the Superior Court held that a trial judge's curative instruction was insufficient where one officer testified as to causation although he did not witness the accident and another officer testified to his issuance of a citation, here Officer Thompson provided no such testimony. Rather, the trial court here instructed the jury to disregard Officer Thompson's unsolicited remark that he could not recall the accident "because to me it would have been an

---

[4] Brodie v. Phila. Transp. Co., 203 A.2d 657 (Pa. 1964); Smith v. Clark, 190 A.2d 441 (Pa. 1963); Johnson v. Peoples Cab Co., 126 A.2d 720 (Pa. 1956); Davis v. White, 156 A.3d 1261 (Pa. Super. 2017); Reed v. Hutchinson, 480 A.2d 1096 (Pa. Super. 1984); Lesher v. Henning, 449 A.2d 32 (Pa. Super. 1982); Kelly v. Buckley, 421 A.2d 759 (Pa. Super. 1980); Andrews v. Jackson, 235 A.2d 452 (Pa. Super. 1967); Anderson v. Russell, 33 Pa. D. & C. 3d 308, 311-12 (C.P. Cumberland 1983).

35

insignificant accident as indicated at [sic] non-reportable  so I --" N.T. at 171, 172. It is well-settled that a jury is presumed to follow the court's instructions.  <u>Paves v. Corson</u>, 801 A.2d 546 (Pa. 2002).

Of further note, <u>Rox Coal</u> is distinguishable because in that case our Supreme Court excluded a police accident report where, among other things, neither of the parties "ever called the State Trooper who authored the report as a witness." <u>Id.</u> at 914.  Here, Officer Thompson testified and was subject to cross-examination.

For these reasons, no error is apparent in the trial court's rulings concerning Officer Thompson's testimony.

## B. Michael Berkovitz
### 1. Contentions

Plaintiff next argues the trial court committed reversible error in allowing Berkovitz, Defendants' accident reconstruction expert, to testify, despite objections and denials of motions *in limine* and a <u>Frye</u> motion, when Berkovitz failed to provide the required proofs for his opinions.  Plaintiff asserts Berkovitz could not have been properly qualified to testify when he did not provide the required competent evidence to support his conclusions.  Additionally, Plaintiff contends the trial court allowed Berkovitz to offer opinions and conclusions based on the impermissible testimony and opinions of Officer Thompson.  Plaintiff argues that, in failing to grant her <u>Frye</u> motion or her motion *in limine*, the trial court failed to provide Plaintiff with the opportunity to disqualify Berkovitz, not in open court, and allowed Berkovitz to provide all of his opinions, including opinions beyond the scope of his expertise, thus tainting the jury.

36

Plaintiff contends an expert may not testify as to his opinions if that expert cannot provide proof of such opinions. Plaintiff argues her objections to Berkovitz's testimony should have been sustained as it was highly prejudicial to allow Berkovitz to testify as to forces involved in the accident and as to debris, when he had no supporting evidence and his conclusions were merely speculation rather than based on evidence either within or beyond the record. Rather, all of Berkovitz's testimony stemmed from the inadmissible hearsay testimony of Officer Thompson.

Plaintiff further argues Berkovitz is not a medical doctor, yet he was allowed to provide opinion testimony as to the movement of the body and what kind of injury Plaintiff would have sustained. Plaintiff asserts Berkovitz's background did not provide any of the requisite expertise to provide testimony as to whether Plaintiff suffered injury in this accident. He was not proffered as a medical expert, yet he was allowed to testify as to an injury or lack thereof. Plaintiff contends it was highly prejudicial to allow Berkovitz to testify when he testified as to an area of expertise outside his field.

Further, Plaintiff argues, Berkovitz had no degrees or requisite qualifications in biomechanical engineering and should not have been qualified to give such testimony, especially in light of the fact that he provided no basis for his opinions. Plaintiff asserts that Pennsylvania Rule of Evidence 705 requires an expert to state the facts or data on which his opinion is based. She contends Pennsylvania courts interpret this Rule to require disclosure of the facts and data underlying an expert's opinion so a jury can properly serve as fact-finder. See Hansen v. Wyeth,

<u>Inc.</u>, Nos. 1063 DEC. TERM 2002, 1207 DEC. TERM 2002, 1202 DEC. TERM 2002 (C.P. Phila. Oct. 10, 2005), 2005 WL 3068256; <u>see</u> <u>also</u> <u>Lewis v. Philly Car Share, Inc.</u>, Nos. 100301088, 01119 (C.P. Phila. July 23, 2013), 2013 WL 4502733.

Here, Plaintiff contends Berkovitz conceded he had no calculations to support his conclusions of the forces involved in the accident. N.T., 6/16/16, at 201. Plaintiff argues this testimony was the basis of her motions *in limine* and objections. Because the trial court denied her motions *in limine* and overruled her objections, Plaintiff maintains, she was only left with attempting to diminish the witness; however, the prejudice was already too great.

Plaintiff further argues Berkovitz's conclusion that the forces from the minor impact to the sheet metal of Plaintiff's vehicle would not have been transmitted to Plaintiff's driver side was borne of a novel and unreliable methodology that is not generally accepted. <u>See</u> <u>Grady v. Frito Lay</u>, 839 A.2d 1038 (Pa. 2003). Additionally, she asserts Berkovitz's lack of scientific methodology is borne out by his failure to review or acknowledge the extensive damage to Plaintiff's vehicle, which did not involve solely the right front fender. Plaintiff contends the lack of full disclosure as to property damage is not a method of analysis accepted in the scientific community.

Plaintiff further argues Berkovitz took evidence out of context, only reviewing photographs of Plaintiff's vehicle as proof of his conclusions. She asserts Berkovitz never reviewed the actual damage repair log, which revealed the damage was much greater than simply the outer shell of the right front fender. Plaintiff contends Berkovitz did not cite the weights of the vehicles or the angles of impact.

38

Rather, he selectively chose from incomplete evidence and failed to account for Gura's testimony, accepting evidence that favored his hypothesis and discarding other evidence that belied his overarching conclusion that Plaintiff caused the accident. Plaintiff maintains this approach differs from the "scientific method in proceeding from hypothesis through scientific proof in support of his conclusions." Betz v. Pneumo Abex, LLC, 44 A.3d 27, 31 (Pa. 2012).

Further, Plaintiff contends, calculating Delta-V, which Berkovitz cites without proof, is a complex process requiring consideration of numerous variables, none of which Berkovitz accounted for in reaching his conclusions. Plaintiff argues Berkovitz needed to provide a foundation to quantify his results, yet he did not provide a damage profile, data from crash tests, stiffness characteristics, weight of the vehicles or other necessary information, all of which are factors an expert must use to reach a conclusion.

Plaintiff also contends the trial court erred in allowing Berkovitz to testify directly from an inadmissible document, the police report, and in allowing Berkovitz to render an opinion as to debris that was based on mere speculation. Plaintiff argues the report did not contain a scintilla of evidence of what the debris was or if it was from this accident. Plaintiff asserts Berkovitz, relying solely on Officer Thompson's inadmissible evidence had no facts, other than the hearsay police report, for his conclusions on debris and impact points. Plaintiff maintains there are no record facts supporting Berkovitz's conclusion that the debris was from either vehicle, and he did not observe the debris. Plaintiff contends Berkovitz's testimony should have been excluded. She argues it was highly prejudicial for

Berkovitz, who was allowed to testify as an expert, to speculate as to what the debris was, where he admitted at trial he did not know what it was and when he prepared his expert report he had no information about the debris.

## 2. Analysis

Upon review, we discern no error in the trial court's rulings concerning Berkovitz's testimony. First, as to Plaintiff's claim that the trial court erred in failing to hold a Frye hearing, our review of the record confirms the trial court's determination that, through her "Motion in Limine to Exclude the Testimony of Michael Berkovitz Because It Fails to Meet the *Frye* Test" (filed less than a week before trial), Plaintiff did not request a hearing. R.R. at 55-57. Rather, Plaintiff requested that the trial court preclude Berkovitz's testimony based on the averments set forth in the motion. Id. In the absence of a request for a hearing, no error is apparent in the trial court's failure to conduct a Frye hearing here.

In addition, the issue of whether a particular witness qualifies as an expert is a matter within the discretion of the trial court. Ruzzi v. Butler Petroleum Co., 588 A.2d 1 (Pa. 1991). A decision on competency of an expert will not be reversed on appeal absent a clear abuse of discretion. Id. Further, in reviewing the trial court's exercise of its discretion, we are mindful that Pennsylvania law "imposes a liberal standard for qualification of an expert, allowing a witness to testify as an expert if he has any reasonable pretension of specialized knowledge on the subject under investigation." Rigler v. Treen, 660 A.2d 111, 116 (Pa. Super. 1995) (citation omitted). "Although the witness must demonstrate some special knowledge or skill, there is no requirement that a witness acquire that knowledge as a result of formal schooling; expertise acquired by experience is expertise

nonetheless." James v. Albert Einstein Med. Ctr., 170 A.3d 1156, 1162 (Pa. Super. 2017) (citation and emphasis omitted).

At trial here, Defendants established that Berkovitz, who holds a Bachelor of Science degree in civil engineering, worked in the field of accident reconstruction for 33 years. R.R. at 602-04. Berkovitz testified he possessed significant experience and education in accident reconstruction and causation, occupant kinematics (the way in which people move inside of a vehicle), and biomechanical engineering, and he testified to these matters over 100 times in various courts. R.R. at 605-06. The trial court accepted Berkovitz as an expert in the fields of accident reconstruction and biomechanical engineering over Plaintiff's objection. R.R. at 607. No abuse of discretion is apparent in that ruling. Indeed, Berkovitz's qualifications and experience clearly establish his competency.

Nevertheless, Plaintiff asserts Berkovitz did not disclose the calculations underlying his opinions in violation of Pennsylvania Rule of Evidence 705. That Rule states: "If an expert states an opinion the expert must state the facts or data on which the opinion is based." Id. "[E]xpert opinion testimony is proper if the facts upon which it is based are of record." Harris, 106 A.3d at 188 (quoting Commonwealth v. Rounds, 542 A.2d 997, 999 (Pa. 1988)).

Here, Berkovitz testified that, in formulating his opinion, he reviewed the police accident report, photographs of the accident scene, photographs of the vehicles, performed an inspection of Gura's vehicle, examined the specifications of Plaintiff's vehicle, reviewed both Plaintiff's deposition and Gura's deposition, and

41

Plaintiff's medical records. R.R. at 608-09. Berkovitz also conducted a site visit of the accident scene. R.R. at 608. He noted that the existence of debris in the right lane of travel as documented in Officer Thompson's police accident report was significant. R.R. at 609. More particularly, he testified:

> Debris in a low speed collision and this was a low speed collision because [Plaintiff] stated in her deposition that she was stopped and [Gura] said that he -- the light changed and he just had started up. So, it's a low speed collision and low speed collisions the vehicles come together the dirt that's under the fenders or the dirt's [sic] that's in the undercarriage of the vehicle will drop down onto the roadway. So, if there is debris that was located in the right lane, it means the two vehicles came together in the right lane of travel.

Id. Berkovitz opined that the existence of debris in the right lane of travel indicated that the right side of Plaintiff's vehicle came into the right lane of travel where Gura's truck was situated and the impact occurred in the right lane. R.R. at 610. Additionally, he explained that the traffic accident investigation manual he used, published by the Northwestern University Traffic Institute, indicated that in some low speed collisions debris may be the only indicator of the area of impact. R.R. at 630. Thus, Berkovitz provided the facts upon which he based his ultimate opinion that the right side of Plaintiff's vehicle came into Gura's lane of travel, and the collision occurred in Gura's lane. R.R. at 610.

In addition, Berkovitz opined that the accident would not have caused an injury to Plaintiff, stating:

> There shouldn't have been any forces involved. The vehicle itself the frame absorbs the forces in a collision. [Plaintiff] [is] sitting approximately six feet from the

42

> impact point. The frame of the vehicle since it's such a low speed collision would have absorbed the energy from the collision and would not have been transmitted into the passenger compartment or in this instance the driver's seat of the passenger's compartment. …
>
> The Delta-v[5] or the change in velocity due to the impact or the collision would have been so low the forces should not have come across into her passenger seating area.

R.R. at 611. Moreover, when questioned regarding the lack of calculations in his report as to the forces involved, Berkovitz stated, "[t]here's no forces involved in a sideswipe type accident." R.R. at 621.[6]

In addition, contrary to Plaintiff's assertions, Berkovitz testified that he did, in fact, reference, but did not rely upon, the repair report for Plaintiff's vehicle, and he explained the reasons why accident reconstruction experts do not rely on repair records in formulating their opinions. R.R. at 625.

---

[5] On cross-examination, Berkovitz further explained that Delta-v is

> [t]he change in velocity. Example is a football team runs out and it's the beginning of the game and they run through the crepe paper banner. They're running at 10 miles an hour. They go through it. They knock it down. Their velocity is still 10 miles an hour. The change of velocity is zero. But if they run out onto the field and hit a brick wall at 10 miles an hour, their velocity change is 10 because they're going to stop. Delta-v is the calculation of the change in the forces of the vehicle and what the vehicle would have undergone.

R.R. at 621.

[6] "[T]he Frye court recognized that the essence of admissibility is general acceptance," by the scientific community, of the principles and methodology employed by the expert. Trach v. Fellin, 817 A.2d 1102, 1110 (Pa. Super. 2003). The Frye test is employed by courts to ensure that novel scientific evidence has obtained acceptance in the scientific community. Id. However, "a Frye analysis is not triggered every time science enters the courtroom; it only applies when an expert seeks to introduce novel scientific evidence." Commonwealth v. Dengler, 843 A.2d 1241, 1243 (Pa. Super. 2004). Here, there is simply no indication that Berkovitz sought to introduce novel scientific evidence or that the methodology underlying Berkovitz's opinions and conclusions lacked general acceptance in the scientific community.

43

Further, Plaintiff's assertions that Berkovitz improperly relied on Officer Thompson's accident report (and specifically its reference to debris in the right lane) in formulating his opinion lacks merit. An expert is permitted to reasonably rely on a police accident report in reconstructing the accident pursuant to Pennsylvania Rule of Evidence 703. Harris. Rule 703 states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Id.

Thus, as the trial court correctly observed, "[e]ven if evidence used by the expert may not itself be admissible, it can be used to support an expert's opinion." Tr. Ct., Slip Op., at 30. Moreover, as set forth above, Officer Thompson's reference to his observation of debris in the right lane, was admissible as a recorded recollection under Pennsylvania Rule of Evidence 803.1(3).

Finally, the remainder of Plaintiff's assertions on this point attack the weight to be afforded Berkovitz's testimony, not its competency. However, factual determinations and issues of credibility of witnesses are left to the jury as fact-finder. Douglass v. Licciardi Constr. Co., Inc., 562 A.2d 913 (Pa. Super. 1989). As such, the jury was free to believe all, some or none of Berkovitz's testimony. Id.

44

For these reasons, we discern no error or abuse of discretion in the trial court's admission of Berkovitz's testimony.

## C. Dr. Karl Rosenfeld
### 1. Contentions

Plaintiff also contends the trial court erred in allowing Dr. Rosenfeld to testify when he was not properly qualified to offer a medical opinion as to the causality of Plaintiff's cervical fusion surgery, where he admitted he never performed such surgery in his entire career. Plaintiff also asserts she was suffering from neurological issues, and Dr. Rosenfeld was not a neurologist or neurosurgeon, only an orthopedist.

Plaintiff contends that, as an expert with no personal knowledge, because he never performed cervical fusion surgery, Dr. Rosenfeld should have been disqualified from providing his opinions as to the necessity of such surgery. Dambacher ex rel. Dambacher v. Mallis, 485 A.2d 408, 418 (Pa. Super. 1984) ("It may appear that the scope of the witness's experience and education may embrace the subject in question in a general way, but the subject may be so specialized that even so, the witness will not be qualified to testify."); see Kovalev v. Sowell, 839 A.2d 359 (Pa. Super. 2003) (doctor with general medical training unqualified to testify about orthopedic injuries); Yacoub v. Lehigh Valley Med. Assocs., 805 A.2d 579 (Pa. Super. 2002) (plaintiff did not show neurosurgeon was qualified to render expert opinion about standard of care appropriate to internal medicine or special unit care nursing); Dierolf v. Slade, 581 A.2d 649 (Pa. Super. 1990) (orthodontist lacked training and experience necessary to present expert testimony regarding oral surgery); McDaniel v. Merck, Sharp, & Dohme, 533 A.2d 436 (Pa. Super. 1987)

(expert in anesthetic drugs lacked training and experience to testify about whether use of antibiotic caused death).

In addition, Plaintiff asserts, Dr. Rosenfeld was allowed to testify to a supplemental report he issued based on Berkovitz's inadmissible testimony. Plaintiff maintains Berkovitz's report was based on facts not of record, inadmissible evidence, and conclusions lacking a proper basis.

Plaintiff also argues, although the trial court's opinion states there were no objections to Dr. Rosenfeld's testimony, the transcript of Dr. Rosenfeld's testimony reveals Plaintiff made numerous objections, which the trial court overruled.

## 2. Analysis

In light of the jury's verdict that Gura was not negligent and our analyses set forth above, it is unnecessary to reach this issue as it relates solely to the purported injuries Plaintiff suffered, and the jury did not reach issues of causation or damages. Indeed, evidentiary rulings that did not affect the verdict will not provide a basis for disturbing the jury's judgment. Detterline v. D'Ambrosio's Dodge, Inc., 763 A.2d 935, 938 (Pa. Super. 2000).

## D. Weight of the Evidence
### 1. Contentions

As a final issue, Plaintiff maintains the trial court erred in not granting a new trial when the verdict was against the weight of the evidence. Specifically,

46

she contends a new trial should be granted as there was no testimony to refute her testimony that she was stopped at the time of the accident and that Gura caused the accident. Plaintiff argues there were no facts to support the jury's verdict that Gura was not at fault. Plaintiff asserts Gura admitted he never saw her at any time before the impact; rather, he did not see her until he felt the impact, and he admitted he looked in his mirror prior to making his turn. Plaintiff argues the driver of a vehicle cannot claim to have looked when he failed to see what the physical facts declare he should have seen. Ditz v. Marshall, 393 A.2d 701 (Pa. Super. 1978); Hoover v. Sackett, 292 A.2d 461 (Pa. Super. 1972).

## 2. Analysis

Again, we reject Plaintiff's assertions. A new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. Elliott v. Ionta, 869 A.2d 502, 504 (Pa. Super. 2005). Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but rather after due consideration of the evidence found credible by the jury, and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion. Id. "It is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgement [sic] for that of the fact-finder." Vattimo v. Eaborn Truck Serv., Inc., 777 A.2d 1163, 1165 (Pa. Super. 2001).

47

Further,

[a]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Haan v. Wells, 103 A.3d 60, 70 (Pa. Super. 2014) (citations omitted).

Here, as the trial court aptly explained (with emphasis added):

[T]he jury found that no one was at fault or negligent in this accident. The [trial court's] exhaustive review of the entirety of the evidence submitted in this case by both sides evinces that [Plaintiff] never met her burden of showing by a preponderance thereof that she was entitled to a decision in her favor.

[Plaintiff] was never able to definitively describe how the accident happened, and [Gura], vehemently refuted her claim that he had swung the truck far to the left to make his turn to the right. [Gura] testified that, while approaching the intersection he felt, and did not hear, a 'thump' to the side of the truck. Plaintiff's assertion of sitting in the center lane at the intersection of Chester Pike and Ashland Avenue was further contradicted by admissible evidence from [Officer] Thompson and [Berkovitz] as to the presence of 'debris' in the right lane that allowed for the circumstantially permissible inference that Plaintiff's vehicle had entered the right lane and struck the truck. This Court may not take on the role of the jury

48

in evaluating any of its credibility determinations that may have been weighted against [Plaintiff] in that regard, nor will it attempt to do so now with regard to the question as to whether anyone involved in this accident was at fault. Suffice it to say that the jury's common sense led it to question and reject the many discrepancies between what a reasonable plaintiff would do under these conditions compared with those actions that were actually carried out. Moreover, the law is longstanding in this Commonwealth that the mere happening of an accident raises no presumption that negligence was involved. [Mitchell].

Tr. Ct., Slip Op., at 33.

The record supports the jury's verdict that Plaintiff did not prove Gura was negligent here. To that end, while Plaintiff claimed Gura struck her vehicle as he swung to the left to make a wide right turn, N.T., 6/15/16, at 109, Gura denied doing so. N.T., 6/16/16, at 141. And, on cross-examination, Plaintiff was unable to clearly explain how Gura's truck came into contact with her vehicle. Id. at 24-25, 33-34, 37. Further, testimony regarding the existence of debris in the right lane, discussed more fully above, allowed for a finding that Plaintiff's vehicle and Gura's truck collided in the right lane where Gura's truck was situated when Plaintiff's vehicle entered that lane. Clearly, the jury's verdict here is "not so contrary to the evidence that it shocks one's sense of justice, nor renders the award of a new trial imperative so that right may be given another opportunity to prevail." Tr. Ct., Slip Op., at 34-35.

## IV. Conclusion

49

For all the foregoing reasons, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Constance Worley and : 
Leonard Worley, H/W, : 
                 Appellants :    No. 2111 C.D. 2016
: 
       v. : 
: 
County of Delaware and Michael Gura :

## **O R D E R**

     **AND NOW**, this 28th day of November, 2017, the order of the Court of Common Pleas of Delaware County is **AFFIRMED**.

 

 

                               _____
                               ROBERT SIMPSON, Judge